**EXHIBIT A**

## IN THE COURT OF COMMON PLEAS
### PROBATE DIVISION
### CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| KATHRYN CARMEN | ) | CASE NO. |
| 1255 Oakridge Drive | ) | |
| Cleveland Heights, Ohio 44121 | ) | JUDGE: |
| | ) | |
| And | ) | |
| | ) | |
| CLAYTON CARMEN | ) | |
| 1347 N. Stanley | ) | |
| Unit 1 | ) | **COMPLAINT FOR LEGAL AND** |
| Los Angeles, California 90046 | ) | **EQUITABLE RELIEF** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **WITH JURY DEMAND** |
| vs. | ) | |
| | ) | |
| AMY CARMEN | ) | |
| 8305 N. Ridgeview Drive | ) | |
| Paradise Valley, Arizona 85253 | ) | |
| | ) | |
| Defendant. | ) | |

NOW COME plaintiffs Kathryn Carmen and Clayton Carmen (collectively referred to herein as "Plaintiffs"), by and through undersigned counsel, and hereby submit their below Complaint for legal and equitable relief against Defendant as follows:

### Parties

1.  Plaintiff Kathryn Carmen is an individual residing in in Cuyahoga County, Ohio and is a beneficiary of The Carmen Family Gift Trust (the "Trust").

2.  Plaintiff Clayton Carmen was born and raised in Cuyahoga County, Ohio, but recently moved to the State of California, where he currently resides and is a beneficiary of the Trust.

3.  Plaintiffs are siblings, and the only children and descendants of decedent Eric H. Carmen ("Decedent").

4.   Defendant Amy Carmen ("Defendant") was appointed successor trustee of the Trust in the case captioned *Eric Carmen v Fred Carmen,* Cuyahoga County Court of Common Pleas, Probate Division, Case No. 2015-ADV-211860 (the "Adversarial Action"), and during her tenure as successor trustee of the Trust was a resident of Cuyahoga County, Ohio.  At all times relevant herein, Defendant was also a resident of Cuyahoga County, Ohio in her individual capacity.

5.   The Trust is an irrevocable inter vivos trust and all causes of action in this Complaint concern or relate to the Trust, and specifically the actions of Defendant in her capacity as successor trustee.

## Jurisdiction

6.   This Court has jurisdiction pursuant to: (a) Chapters 5801 to 5811 of the Ohio Revised Code (the "Ohio Trust Code"), specifically O.R.C. § 5802.03 of the Ohio Trust Code; and/or (b) O.R.C. § 2101.24(B)(1)(b).

7.   This Court has personal jurisdiction over Defendant pursuant to O.R.C. § 5802.02.

8.    Jurisdiction over Defendant is also appropriate as Defendant previously submitted to this Court's jurisdiction in the Adversarial Action while purportedly serving in her capacity as successor trustee of the Trust.

## History and Formation of the Trust

9.   Decedent was a talented and successful musician during his life that led to both critical fame and wealth.

10.  Decedent was the lead singer of the Raspberries, which was a very popular rock and roll band that had numerous hit songs.

2

11. Following the break-up of the band, Decedent had an extremely successful solo career, which included such hits songs as "All By Myself," "Almost Paradise" (included in the film *Footloose*), "Hungry Eyes" (included in the film *Dirty Dancing*), and "Make Me Lose Control."

12. Decedent obtained considerable wealth from his musical career, including ongoing royalty payments.

13. On or about July 11, 2007, Plaintiff created and established the Trust.

14. The Trust is governed by the "Trust Agreement for the Carmen Family Gift Trust" (the "Trust Agreement"), and which Trust Agreement is attached hereto as <u>Exhibit A</u> and incorporated by reference.

15. The Trust Agreement is a noncharitable irrevocable trust instrument governed and controlled by the laws of the State of Ohio. (Trust Agreement Sections 9, 10).

16. Following the formation of the Trust, Decedent contributed all of the rights and ownership to his music copyrights and catalog, in addition to other property, to the Trust. (<u>See</u> Adversarial Action, Complaint for Legal and Equitable Relief, ¶ 9; and Adversarial Action, First Amended Complaint for Legal and Equitable Relief, ¶ 9).

17. The Trust assets comprised all or a vast majority of Decedent's wealth and property.

18. Decedent's brother, Fred Carmen ("Fred"), was initially appointed trustee of the Trust and served for approximately eight years until the Adversarial Action.

19. The Trust's material purpose was to: (a) protect all of Decedent's assets that were contributed to the Trust; (b) provide a stream of income to Decedent during his life; and (c) provide for Decedent's children (*i.e.*, Plaintiffs) after Decedent's death (collectively, the "Material Purpose").

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

20. The Material Purpose is corroborated by Decedent in his own filings in the Adversarial Action. (See Adversarial Action, Complaint for Legal and Equitable Relief, ¶ 12; and Adversarial Action, First Amended Complaint for Legal and Equitable Relief, ¶ 12).

21. During his lifetime, Decedent was a beneficiary of the Trust.

22. Pursuant to the Trust Agreement, the trustee of the Trust was permitted to pay Decedent portions of the net income of the Trust for Decedent's care and happiness and the trustee was prohibited from distributing principal during Decedent's lifetime. (Trust Agreement Section 2).

23. During Decedent's lifetime, Plaintiffs, as the only children and descendants of Decedent, were also considered beneficiaries, as such term is defined by the Ohio Trust Code. (O.R.C. § 5801.01(C)).

24. Following Decedent's death, and pursuant to the Trust Agreement, Plaintiffs are the only remaining beneficiaries of the Trust and are entitled to receive the Trust assets in accordance with the terms of the Trust Agreement. (Trust Agreement Section 3).

## Relevant Factual Background

25. Decedent was previously married to Susan Wirtenberg (f/k/a Susan Carmen) ("Susan") and they had two children (Plaintiffs) before divorcing on or about July 28, 2011 (the "Divorce").

26. As part of the Divorce, Susan and Decedent had shared custody of Plaintiffs as they were minor children at the time.

27. The period of time following the Divorce was very difficult and impacted the quality of the father-child relationship between Plaintiffs and Decedent.

28. At some point in time in the years following the Divorce, Defendant and Decedent began a romantic relationship and Defendant moved into Decedent's residence in Cuyahoga County, Ohio.

4

29. Decedent and Defendant married on or about October 7, 2016, and upon information and belief, Decedent and Defendant remained married until Decedent's death.

30. Rather than being a calming influence, Defendant further exacerbated the difficult situation Plaintiffs faced when staying at Decedent's residence.

31. From the beginning of her relationship with Decedent until his death, including while Plaintiffs were minors, Defendant engaged in a repeated and constant pattern of behavior to create a barrier between Decedent and his children.

32. Defendant did so in a concerted effort to isolate Decedent from his only children, Plaintiffs.

33. Defendant's actions were volitional and done to create a barrier between Plaintiffs and Decedent, with Defendant acting as the sole gatekeeper, which included prohibiting Plaintiffs from having any contact with Decedent and screening telephone calls and messages to Decedent.

34. Defendant's years-long effort and goal to isolate Decedent from Plaintiffs was done in order divert to Trust assets, property and funds away from the Plaintiffs and, upon information and belief, for Defendant's benefit.

35. Defendant sought control over the Trust assets and in order to do so, needed to remove Plaintiffs as beneficiaries.

36. Due to Defendant's actions, Plaintiffs were isolated from their own father and unable to have contact with him for numerous years before his death.

37. Defendant's pattern of behavior continued after Decedent's death as she initially refused to notify Plaintiffs of the planned memorial service for Decedent and thereafter threatened to have Plaintiffs forcibly removed if they attended. Defendant also refused to provide Plaintiffs with Decedent's personal effects that were generational family heirlooms and had sentimental value.

## Defendant's Role as Successor Trustee and the Adversarial Action

38.  On or about November 12, 2015, the Adversarial Action commenced when Decedent filed his Complaint for Legal and Equitable Relief in this Court against his brother, Fred, alleging numerous causes of action regarding Fred's performance as trustee of the Trust.

39. Fred resigned as trustee on or about December 23, 2015, and thereafter, Sheldon Berns was appointed successor trustee, and which appointment was approved by this Court pursuant to its December 29, 2015 Judgment Entry in the Adversarial Action.

40. On or about January 26, 2016, Sheldon Berns resigned and Jonathan Berns was appointed as successor trustee.

41. Thereafter, on or about June 10, 2016, Jonathan Berns, in his capacity as successor trustee of the Trust, filed a motion to intervene on behalf of the Trust in the Adversarial Action which motion was granted by this Court pursuant to its July 12, 2016 Judgment Entry.

42. As is clear by the public docket, the Adversarial Action was acrimonious and lasted several years.

43. In approximately May of 2017, Jonathan Berns, as successor trustee of the Trust and on behalf of the Trust, along with Decedent and Fred participated in mediation to resolve the dispute at the center of the Adversarial Action, which proved successful.

44. Despite the resolution and in furtherance of her effort to obtain control over the Trust assets, Defendant inserted herself into the Adversarial Action causing further extensive motion practice, delay and dispute.

45. On or about September 12, 2017, Defendant, via her counsel, filed a Notice of Substitution of Intervening Plaintiff in the Adversarial Action, attached hereto as Exhibit B-1 and incorporated by reference herein.

6

46. Contained within the notice was an exhibit that purportedly documented the resignation of Jonathan Berns and the appointment of Defendant as successor trustee of the Trust in his place, effective as of June 13, 2017.

47. On or about September 19, 2017, Defendant, via her counsel, formally moved this Court to substitute her as the successor trustee of the Trust as delineated in the Motion to Substitute Successor Trustee for Prior Trustee, attached hereto as <u>Exhibit B-2</u> and incorporated by reference herein.

48. Based on the foregoing representations and information, this Court approved Defendant's appointment as successor trustee of the Trust as delineated in this Court's October 6, 2017 Judgment Entry in the Adversarial Action, attached hereto as <u>Exhibit B-3</u> and incorporated by reference herein.

49. From September 2017 through resolution of the dispute in February 2018, Defendant made repeated representations to this Court in the Adversarial Action that she was the successor trustee of the Trust, which included numerous filings and motions.

50. On or about February 5, 2018, the parties, including Defendant, acting in her capacity as successor trustee of the Trust, filed a Stipulated Notice of Dismissal With Prejudice in the Adversarial Action, attached hereto as <u>Exhibit B-4</u>, and incorporated by reference herein.

## Recent Disclosures and Current Events

51. Due to the acrimonious relationship with Decedent exacerbated by Defendant and in furtherance of her efforts to isolate Plaintiffs from their father, Plaintiffs only became aware of the presence of the Trust following Decedent's death.

52. Following Decedent's death, Plaintiffs sought to obtain information about the Trust, as well as the death of their father.

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

53. Plaintiffs never previously received a copy of the Trust Agreement and were only provided the instrument (the version appended as Exhibit A to this Complaint) following Decedent's death.

54. Similarly, Plaintiffs only learned about Defendant's purported tenure as successor trustee of the Trust following Decedent's death.

55. Thereafter, Plaintiffs attempted to contact Defendant to obtain necessary information about the Trust, in addition to other requests for personal sentimental items of Decedent that were family heirlooms.

56. In a continued effort of concealment and isolation, Defendant went to great efforts to ensure that Plaintiffs did not know the location or address of Decedent and Defendant.

57. After incurring costs and expenses, Plaintiffs were able to locate Defendant, and on or about April 22, 2024, Plaintiffs' counsel sent a correspondence, requesting, among other items, a full reporting and accounting of the Trust.

58. On or about April 29, 2024, Defendant, via her counsel, responded that Defendant was not the trustee of the Trust and that the "[Trust] was discontinued in 2017." Defendant's response further asserted that Plaintiffs were not entitled to any information about the Trust.

59. Given the gravity and severity of the assertions contained in Defendant's correspondence, Plaintiffs' counsel issued a subsequent follow-up letter on or about May 16, 2024 ("Clarification Letter"), seeking clarification to the claims that the Trust had been "discontinued."

60. The Clarification Letter reiterated the request for a full accounting of the Trust assets in addition to requesting the name and contact information of any successor trustee of the Trust, among other information.

61. On or about May 30, 2024 , Defendant, via her counsel responded (the "Disclosure Letter) wherein Defendant retracted her statement that the Trust was "discontinued" and instead asserted

8

that the prior reference to discontinuance was meant "as to [Plaintiffs'] rights as contingent beneficiaries." The Disclosure Letter divulged that the Trust "still exists, but in a different jurisdiction, with different terms, and with different beneficiaries" and that Defendant caused the Trust to "be substantially reformed to disinherit [Plaintiffs]."

62. Pursuant to the Disclosure Letter, Defendant purportedly only served as trustee of the Trust from June 13, 2017 to approximately August 11, 2017.

63. During this extremely brief period, Defendant purportedly transferred the jurisdiction and administration of the Trust from the State of Ohio to the State of South Dakota (the "Improper Transfer").

64. Defendant performed the Improper Transfer in secret and concealed such action from Plaintiffs.

65. Defendant's goal was to complete the Improper Transfer in an effort to change the governing laws of the Trust Agreement from Ohio to South Dakota, in a mistaken belief that in doing so she could then avail herself of a purportedly more "favorable" jurisdiction and code to surreptitiously remove Plaintiffs as beneficiaries of the Trust.

66. The Improper Transfer served as an impermissible modification and/or amendment to the Trust Agreement, a noncharitable irrevocable trust instrument.

67. The Improper Transfer was performed in contravention of the Trust Agreement terms and the Ohio Trust Code.

68. The Improper Transfer was performed in contravention of the Material Purpose of the Trust Agreement.

69. The Improper Transfer was done without approval of this Court or any court of competent jurisdiction within the State of Ohio.

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

70. The Plaintiffs, as beneficiaries (as such term is defined by the Ohio Trust Code), were never notified of the Improper Transfer.

71. The Plaintiffs, as beneficiaries (as such term is defined by the Ohio Trust Code), never consented to the Improper Transfer.

72. Plaintiffs first discovered the Improper Transfer upon receipt of the Disclosure Letter.

73. Following the Improper Transfer, and in furtherance of Defendant's goal to remove Plaintiffs as beneficiaries of the Trust and to obtain control of the Trust assets, Defendant caused the Trust to be substantially reformed to disinherit the Plaintiffs (the "Invalid Disinheritance").

74. As iterated in the Disclosure Letter, and following the Improper Transfer, Defendant utilized South Dakota law to complete the Invalid Disinheritance scheme by decanting all assets of the Trust, or undertook similar actions whereby Plaintiffs were removed as beneficiaries of the Trust.

75. Like the Improper Transfer, the Invalid Disinheritance was performed in secret and concealed from Plaintiffs.

76. The Invalid Disinheritance served as an impermissible modification and/or amendment to the Trust Agreement, a noncharitable irrevocable trust instrument.

77. The Invalid Disinheritance was performed in contravention of the Trust Agreement terms and the Ohio Trust Code.

78. The Invalid Disinheritance was performed in contravention of the Material Purpose of the Trust Agreement.

79. The Invalid Disinheritance was done without approval of this Court or any court of competent jurisdiction within the State of Ohio.

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

80. The Plaintiffs, as beneficiaries (as such term is defined by the Ohio Trust Code), were never notified of the Invalid Disinheritance.

81. The Plaintiffs, as beneficiaries (as such term is defined by the Ohio Trust Code), never consented to the Invalid Disinheritance.

82. Plaintiffs first discovered the Invalid Disinheritance upon receipt of the Disclosure Letter.

83. The Trust Agreement was and continues to be governed by the laws of the State of Ohio.

84. With her plans finalized following the Improper Transfer and Invalid Disinheritance, Defendant resigned as successor trustee and/or co-trustee of the Trust on or about August 11, 2017 ("Resignation Date").

85. Defendant's resignation is documented in that certain Resignation of Trustee attached hereto as <u>Exhibit C</u> and incorporated by reference herein ("Resignation Notice").[1]

86. The Resignation Notice documents that a purported South Dakota resident was the sole trustee of the Trust effective as of the Resignation Date.

87. The Resignation Notice lists both Defendant and Decedent as residents of Gates Mills, County of Cuyahoga, State of Ohio.

88. The Resignation Notice was executed and notarized in Cuyahoga County, Ohio.

89. Decedent was never a resident of South Dakota and, upon information and belief, the Trust did not maintain any assets or have any contacts with the State of Dakota.

90. The Resignation Notice references that the Trust was purportedly amended and restated on or about August 11, 2017 (the "Amendment").

91. The purported Amendment was performed without approval of this Court or any court of competent jurisdiction within the State of Ohio.

---

[1] The Resignation Notice was appended to the Disclosure Letter and, upon information and belief, the redactions were made by Defendant and/or Defendant's counsel.

11

92. The Plaintiffs, as beneficiaries (as such term is defined by the Ohio Trust Code) were never notified of the Amendment.

93. The Plaintiffs, as beneficiaries (as such term is defined by the Ohio Trust Code) never consented to the Amendment.

94. Defendant concealed the Amendment from Plaintiffs.

95. Plaintiffs are without knowledge of the terms of the Amendment.

96. Plaintiffs first discovered the existence of the purported Amendment upon receipt of the Disclosure Letter.

97. For approximately a decade, the Trust was administered in Ohio and governed by Ohio law in accordance with the terms of the Trust Agreement.

98. Despite the foregoing, and in a period of approximately two (2) months, Defendant, through her surreptitious actions, caused the Improper Transfer and Invalid Disinheritance to occur before resigning as successor trustee.

99. Upon information and belief, Defendant's Resignation Notice was also done to permit her to be a named beneficiary of the Trust and/or inherit the Trust assets.

100.    Defendant's surreptitious conduct was not only limited to Plaintiffs, but also including misrepresentations made to this Court in the Adversarial Action.

101.    As iterated in paragraphs 42-50 above, for months following the Resignation Date, Defendant continued to represent to this Court in the Adversarial Action that she was the successor trustee acting on behalf of the Trust.

102.    All filings of Defendant in the Adversarial Action, purportedly in her capacity as trustee of the Trust, in the Adversarial Action, occurred after the Resignation Date. Effective as of

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

the Resignation Date, Defendant was purportedly no longer serving in any capacity as trustee of the Trust.

103.     Defendant never made this Court aware that she was acting as successor trustee of the Trust without the capacity to do so.

104.     Defendant's decision to conceal material facts to this Court further establishes her course of conduct concerning all matters of the Trust, including the Improper Transfer and Invalid Disinheritance.

105.     To date, Defendant has only provided Plaintiffs with a purported checking account statement of the Trust for June of 2017 along with a supposed list of expenses contemporaneous thereto.

106.     Upon information and belief, Defendant has had access to the Trust accounts and assets since the Improper Transfer.

107.     Plaintiffs are the rightful heirs to the Trust assets and Defendant's egregious conduct should not be permitted to continue.

108.     Defendant's actions were not in furtherance of the Material Purpose of the Trust, but rather her own self interests.

109.     All actions and events from the date of the Improper Transfer to present date must be voided and unwound.

<u>**Count I**</u>
<u>**Breach of Trust – Duty of Good Faith**</u>
<u>**(O.R.C. § 5808.01)**</u>

110.     Plaintiffs incorporate each and every allegation contained within paragraphs 1-109 of this Complaint as if restated herein.

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

111.     As trustee of the Trust, Defendant had a duty to administer the Trust in good faith, in accordance with its terms and purposes and interests of Plaintiffs, as beneficiaries of the Trust, pursuant to O.R.C. § 5808.01.

112.     At all times relevant herein, Plaintiffs were beneficiaries of the Trust as such term is defined in the Ohio Trust Code.

113.     As iterated in greater detail above, including without limitation the averments contained within paragraphs 9-37 and 51-109, and Defendant's actions concerning the Improper Transfer, Invalid Disinheritance and Amendment, Defendant breached her duty of good faith imposed upon her by O.R.C. § 5808.01.

114.     As a result of Defendant's breach, Plaintiffs have been damaged in amount to be determined at trial, but in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00), and for which amount Plaintiffs are entitled to damages pursuant to O.R.C. § 5810.02.

115.     As a further result of Defendant's breach, Plaintiffs also seek the following relief from this Court pursuant to Chapter 5810 of the Ohio Trust Code:

a.  An Order from this Court compelling Defendant to redress the aforementioned breach by payment of money, restoring property, or other means pursuant to O.R.C. § 5810.01(B)(3);

b.  An Order from this Court appointing a special fiduciary to take possession of the Trust property and administer the Trust pursuant to O.R.C. § 5810.01(B)(5);

c.  An Order from this Court voiding the Improper Transfer pursuant to O.R.C. § 5810.01(B)(9);

d.  An Order from this Court voiding the Invalid Disinheritance pursuant to O.R.C. § 5810.01(B)(9);

e.  An Order from this Court voiding the Amendment pursuant to O.R.C. § 5810.01(B)(9);

f.  An Order from this Court imposing a constructive lien and/or a constructive trust on the Trust assets pursuant to O.R.C. § 5810.01(B)(9); and

14

g. Tracing the Trust assets and/or property wrongfully disposed of and recover the property or its proceeds pursuant to O.R.C. § 5810.01(B)(9).

## Count II
## Breach of Trust – Duty of Loyalty to Beneficiaries
## (O.R.C. § 5808.02)

116.     Plaintiffs incorporate each and every allegation contained within paragraphs 1-115 of this Complaint as if restated herein.

117.     As trustee of the Trust, Defendant had a duty to administer the Trust solely in the interests of the beneficiaries.

118.     At all times relevant herein, Plaintiffs were beneficiaries of the Trust as such term is defined in the Ohio Trust Code.

119.     As iterated in greater detail above, including without limitation the averments contained within paragraphs 9-37 and 51-109, and Defendant's actions concerning the Improper Transfer, Invalid Disinheritance and Amendment, Defendant breached her duty of loyalty owed to Plaintiffs imposed upon her by O.R.C. § 5808.02.

120.     As a result of Defendant's breach, Plaintiffs have been damaged in amount to be determined at trial, but in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00), and for which amount Plaintiffs are entitled to damages pursuant to O.R.C. § 5810.02.

121.     As a further result of Defendant's breach, Plaintiffs also seek the following relief from this Court pursuant to Chapter 5810 of the Ohio Trust Code:

a. An Order from this Court compelling Defendant to redress the aforementioned breach by payment of money, restoring property, or other means pursuant to O.R.C. § 5810.01(B)(3);

b. An Order from this Court appointing a special fiduciary to take possession of the Trust property and administer the Trust pursuant to O.R.C. § 5810.01(B)(5);

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

c. An Order from this Court voiding the Improper Transfer pursuant to O.R.C. § 5810.01(B)(9);

d. An Order from this Court voiding the Invalid Disinheritance pursuant to O.R.C. § 5810.01(B)(9);

e. An Order from this Court voiding the Amendment pursuant to O.R.C. § 5810.01(B)(9);

f. An Order from this Court imposing a constructive lien and/or a constructive trust on the Trust assets pursuant to O.R.C. § 5810.01(B)(9); and

g. Tracing the Trust assets and/or property wrongfully disposed of and recover the property or its proceeds pursuant to O.R.C. § 5810.01(B)(9).

**Count III**
**Breach of Trust – Duty of Impartiality**
**(O.R.C. § 5808.03)**

122. Plaintiffs incorporate each and every allegation contained within paragraphs 1-121 of this Complaint as if restated herein.

123. During Defendant's tenure as trustee, the Trust had multiple beneficiaries, including Plaintiffs.

124. As trustee of the Trust, Defendant had a duty to act impartially in investing, managing and distributing the Trust property giving due regard to Plaintiffs' interests as beneficiaries.

125. As iterated in greater detail above, including without limitation the averments contained within paragraphs 9-37 and 51-109, and Defendant's actions concerning the Improper Transfer, Invalid Disinheritance and Amendment, Defendant breached the duty imposed upon her by O.R.C. § 5808.03.

126. As a result of Defendant's breach, Plaintiffs have been damaged in amount to be determined at trial, but in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00), and for which amount Plaintiffs are entitled to damages pursuant to O.R.C. § 5810.02.

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

127.      As a further result of Defendant's breach, Plaintiffs also seek the following relief from this Court pursuant to Chapter 5810 of the Ohio Trust Code:

    a.  An Order from this Court compelling Defendant to redress the aforementioned breach by payment of money, restoring property, or other means pursuant to O.R.C. § 5810.01(B)(3);

    b.  An Order from this Court appointing a special fiduciary to take possession of the Trust property and administer the Trust pursuant to O.R.C. § 5810.01(B)(5);

    c.  An Order from this Court voiding the Improper Transfer pursuant to O.R.C. § 5810.01(B)(9);

    d.  An Order from this Court voiding the Invalid Disinheritance pursuant to O.R.C. § 5810.01(B)(9);

    e.  An Order from this Court voiding the Amendment pursuant to O.R.C. § 5810.01(B)(9);

    f.  An Order from this Court imposing a constructive lien and/or a constructive trust on the Trust assets pursuant to O.R.C. § 5810.01(B)(9); and

    g.  Tracing the Trust assets and/or property wrongfully disposed of and recover the property or its proceeds pursuant to O.R.C. § 5810.01(B)(9).

**Count IV**
**Breach of Trust – Duty to Act as Prudent Person**
**(O.R.C. § 5808.04)**

128.      Plaintiffs incorporate each and every allegation contained within paragraphs 1-127 of this Complaint as if restated herein.

129.      As trustee of the Trust, Defendant had a duty to administer the Trust as a prudent person would and was required to consider the purposes, terms, distributional requirements and other circumstances of the Trust.

130.      As iterated in iterated in greater detail above, including without limitation the averments contained within paragraphs 9-37 and 51-109, and Defendant's actions concerning the

17

Improper Transfer, Invalid Disinheritance and Amendment, Defendant breached the duty to act as a prudent person imposed upon her by O.R.C. § 5808.04.

131.      As a result of Defendant's breach, Plaintiffs have been damaged in amount to be determined at trial, but in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00), and for which amount Plaintiffs are entitled to damages pursuant to O.R.C. § 5810.02.

132.      As a further result of Defendant's breach, Plaintiffs also seek the following relief from this Court pursuant to Chapter 5810 of the Ohio Trust Code:

      a. An Order from this Court compelling Defendant to redress the aforementioned breach by payment of money, restoring property, or other means pursuant to O.R.C. § 5810.01(B)(3);

      b. An Order from this Court appointing a special fiduciary to take possession of the Trust property and administer the Trust pursuant to O.R.C. § 5810.01(B)(5);

      c. An Order from this Court voiding the Improper Transfer pursuant to O.R.C. § 5810.01(B)(9);

      d. An Order from this Court voiding the Invalid Disinheritance pursuant to O.R.C. § 5810.01(B)(9);

      e. An Order from this Court voiding the Amendment pursuant to O.R.C. § 5810.01(B)(9);

      f. An Order from this Court imposing a constructive lien and/or a constructive trust on the Trust assets pursuant to O.R.C. § 5810.01(B)(9); and

      g. Tracing the Trust assets and/or property wrongfully disposed of and recover the property or its proceeds pursuant to O.R.C. § 5810.01(B)(9).

**Count V**
**Common Law Breach of Fiduciary Duty**

133.      Plaintiffs incorporate each and every allegation contained within paragraphs 1-132 of this Complaint as if restated herein.

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

134. Defendant, as a fiduciary, had a common law duty to administer the Trust in accordance with the terms of the Trust Agreement and in the interests of Plaintiffs, as beneficiaries of the Trust.

135. Defendant, as iterated in greater detail above, including without limitation the averments contained within paragraphs 9-37 and 51-109, and following Defendant's actions concerning the Improper Transfer, Invalid Disinheritance and Amendment, breached the aforementioned common-law duty imposed on her.

136. As a result of Defendant's breach, Plaintiffs have been damaged in amount to be determined at trial, but in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00).

## Count VI
## Fraud (Fraudulent Concealment)

137. Plaintiffs incorporate each and every allegation contained within paragraphs 1-136 of this Complaint as if restated herein.

138. Defendant concealed the Improper Transfer, Invalid Disinheritance and Amendment from Plaintiffs.

139. The concealment was of a material fact, as it concealed the actions of Defendant that were in contravention of the Trust Agreement terms and the Material Purpose of the Trust.

140. Defendant's fraudulent actions also involved concealment of material facts to this Court in the Adversarial Action, specifically Defendant concealed that she was no longer successor trustee of the Trust despite representations otherwise in numerous filings, as iterated in greater detail paragraphs 42-50 and 100-104 above.

141. Defendant performed such actions with knowledge of the concealment and with the intent to mislead Plaintiffs, and conceal the circumstances and events surrounding the Improper Transfer and Invalid Disinheritance from Plaintiffs.

19

142.     Plaintiffs, as beneficiaries of the Trust, had a right to be made aware of the Improper Transfer and Invalid Disinheritance, which was concealed by Defendant.

143.     As a result of Defendant's actions, Plaintiffs have been damaged in amount to be determined at trial, but in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00), as well as punitive damages.

<u>**Count VII**</u>
<u>**Intentional Interference With an Expectancy of an Inheritance**</u>

144.     Plaintiffs incorporate each and every allegation contained within paragraphs 1-143 of this Complaint as if restated herein.

145.     At all times relevant herein, Plaintiffs were beneficiaries of the Trust (as such term is defined in the Ohio Trust Code) and are the sole beneficiaries of the trust following Decedent's death.

146.     As a result, Plaintiffs have an expectancy of an inheritance.

147.     Defendant intentionally interfered with that expectancy as iterated in greater detail above, including without limitation the averments contained within paragraphs 9-37 and 51-109, and Defendant's actions concerning the Improper Transfer, and Invalid Disinheritance.

148.     Defendant's interference was caused by the tortious conduct of Defendant, including without limitation, fraud, duress and/or undue influence.

149.     It is reasonably certain that Plaintiffs' expectancy of inheritance would have been realized but for Defendant's interference.

150.     As a result of Defendant's breach, Plaintiffs have been damaged in amount to be determined at trial, but in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00).

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

WHEREOFRE, Plaintiffs respectfully request judgment against Defendant as follows:

a.  For compensatory damages in an amount in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00);

b.  For punitive damages in an amount in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00);

c.  An Order from this Court compelling Defendant to redress the aforementioned breach by payment of money, restoring property, or other means pursuant to O.R.C. § 5810.01(B)(3);

d.  For an Order from this Court appointing a special fiduciary to take possession of the Trust property and administer the Trust pursuant to O.R.C. § 5810.01(B)(5);

e.  For an Order from this Court voiding the Improper Transfer pursuant to O.R.C. § 5810.01(B)(9);

f.  For an Order from this Court voiding the Invalid Disinheritance pursuant to O.R.C. § 5810.01(B)(9);

g.  An Order from this Court voiding the Amendment pursuant to O.R.C. § 5810.01(B)(9);

h.  For an Order from this Court imposing a constructive lien and/or a constructive trust on the Trust assets pursuant to O.R.C. § 5810.01(B)(9);

i.  For an Order from this Court tracing the Trust assets and/or property wrongfully disposed of and recover the property or its proceeds pursuant to O.R.C. § 5810.01(B)(9);

j.  For pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses; and

k.  For all other relief which this Court deems equitable and just.

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

Respectfully submitted,

/s/ Richard N. Selby, II
Richard N. Selby  (0059996)
rselby@dworkenlaw.com
Joseph N. Cindric (0092624)
jcindric@dworkenlaw.com
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, OH 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469

*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs respectfully demand a trial by the maximum number of jurors permitted by law.

/s/ Richard N. Selby, II
Richard N. Selby  (0059996)
**DWORKEN & BERNSTEIN CO., L.P.A.**
Attorney for Plaintiffs

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

## TRUST AGREEMENT
## FOR THE
## CARMEN FAMILY GIFT TRUST

THIS AGREEMENT is entered into at _Cleveland_, Ohio, this 1ͭʰ day of _July_, 2007, between ERIC H. CARMEN, referred to in the first person, and FRED N. CARMEN, Trustee.

WHEREAS, I desire to have the Trustee take title to and hold in trust, upon the terms and subject to the uses and purposes hereinafter set forth, certain property presently belonging to me, and/or I have caused, or will cause, the Trustee hereunder to be designated the beneficiary of certain policies of insurance on my life or retirement plans, which property, insurance policies and/or retirement plans may from time to time be described in Schedule A, attached hereto and made a part hereof; and

WHEREAS, additional property may be transferred in the future to the Trustee hereunder, by way of lifetime transfers or by way of proceeds of insurance policies or retirement plans, or by way of transfers pursuant to the terms of my Will or the Wills of other persons, or by way of transfers pursuant to directions contained in other trust instruments, or otherwise, such property to be held upon the terms and subject to the uses and purposes hereinafter set forth, whether or not such additional property is added to Schedule A hereto;

NOW, THEREFORE, in consideration of the mutual promises herein contained, the parties hereto agree as follows:

### SECTION 1. CAPTIONS

The captions of the various Sections of this trust instrument are for convenience and identification purposes only and in no way define, limit, expand or describe the scope or intent of

**Exhibit A**

this trust instrument or the provisions of this trust instrument or in any manner affect this trust instrument.  For ease of reference, there appear frequently in this trust instrument references to specific Sections; all such references shall mean the specific Sections as follows:

> References to the "Descendant's Trust" shall mean that Section entitled "DESCENDANT'S TRUST: TRUST FOR ANY DESCENDANT OF MINE;" and

> References to the "Discretionary Standards Section" shall mean that Section entitled "DISCRETIONARY STANDARDS: STANDARDS GOVERNING DISCRETIONARY DISTRIBUTIONS BY TRUSTEE."

## SECTION 2. PAYMENTS DURING MY LIFETIME

During my lifetime, the Trustee shall pay to me or for my personal benefit such portions of the net income of the trust as the Trustee, in the Trustee's sole discretion, may determine for my care and happiness.  No distributions of principal shall be made to me or any other person during my lifetime.

## SECTION 3. UPON MY DEATH

Upon my death, all the assets then remaining in the trust estate (including all assets payable or deliverable to this trust on account of my death, whether by way of proceeds of insurance on my life or retirement plans, or transfers pursuant to the terms of my Will or otherwise) shall be distributed in such amounts or shares and upon such conditions, in trust or otherwise, to or for the benefit of one or more of that group of persons that includes every person who is a descendant of mine, the spouse or surviving spouse of any descendant of mine, or any organization to which gifts are deductible for the purpose of determining federal estate taxes.  No purported exercise of this power of appointment shall be valid unless it includes specific reference to this instrument.  Any part of such assets that I shall not effectively appoint shall be held and/or distributed as follows:

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

A.   Payment of Taxes, Source of Payment and Limitation.

(1)    Subject to the following limitations of this Paragraph A, the Trustee shall contribute from the principal of the trust estate the amount of all estate, inheritance, succession or transfer taxes or other death duty, federal or state, payable by reason of my death, including interest and penalties thereon, if any (hereinafter referred to in this Paragraph A as the "Taxes"); and in connection with any such action the Trustee shall rely upon the written statement of my Executor, if any, as to the validity and correctness of the amounts of any such Taxes, and shall furnish funds to my Executor so as to enable my Executor to discharge the same, or shall discharge any part or all thereof itself by making payment directly to the governmental official or agency entitled or claiming to be entitled to receive payment thereof. No consideration need be required by the Trustee from my Executor for any disbursement made by the Trustee pursuant to this Paragraph (A)(1), nor shall there be any obligation upon my Executor to repay to the Trustee any of the funds disbursed by it hereunder, and all amounts disbursed by the Trustee pursuant to the authority hereby conferred upon it shall be disbursed without any right in or duty upon the Trustee to seek or obtain contribution or reimbursement from any person or property on account of such payment. The Trustee shall not be responsible for the application of any funds delivered by it to my Executor pursuant to the authority herein granted, nor shall the Trustee be subject to liability to any beneficiary hereunder or account of any payment made by it pursuant to the provisions hereof. The Trustee, in the payment of such Taxes, shall be subject to, and shall follow, the provisions of my

3

Will that are applicable to my Executor in the payment of such Taxes (whether or not an Executor is appointed under my Will).

(2)     Any provisions of this Paragraph A to the contrary notwithstanding, under no circumstances shall the Trustee make any disbursement pursuant to this Paragraph A from (a) assets which are excluded from my gross estate for purposes of the federal estate tax payable by reason of my death or (b) assets which are not subject to a state inheritance, state estate or other state death tax imposed by reason of my death; provided, however, that assets described in clause (a) of this sentence) may be used to the extent that other assets which are included in my gross estate for purposes of the federal estate tax payable by reason of my death and subject to a state inheritance, state estate or other state death tax imposed by reason of my death shall be insufficient to satisfy the Trustee's obligation hereunder.

(3)     The contribution towards the payment of the Taxes made by the Trustee, as specified in Paragraph (A)(1) above, shall not exceed the excess of (a) all Taxes which become payable by reason of my death, over (b) all Taxes that would become payable by reason of my death if in the tax computation thereof there had not been included any property belonging to the trust estate. The Trustee shall pay this amount at such times as my Executor may in writing request (or, if no Executor has been appointed, at such time as the Trustee shall determine) as funds are needed to pay said Taxes. Notwithstanding the aforesaid provisions of this Paragraph A, to the extent my Will contains a different direction for the payment of death taxes which specifically refers to this Trust Agreement,

4

the Trustee shall follow the provisions of my Will except that the total amount of death taxes to be paid from this Trust Agreement shall not exceed the amount of death taxes that would have been paid if my Will had not contained such a different direction for the payment of death taxes.

B. _Disposition of Balance of Trust Assets_. The balance of the trust assets remaining after giving effect to the preceding provisions of this Section 3 shall be held and/or distributed as follows:

(1) All such assets, including without limitation all membership units in The Carmen Group, LLC, an Ohio limited liability company, or any successor entity thereto (The Carmen Group LLC or any successor entity thereto being hereinafter referred to as "The Carmen Group"), shall be allocated per stirpes among my descendants who survive me and, as so allocated, shall be distributed outright to each such beneficiary; provided, however, that if any such beneficiary is then less than twenty-five (25) years of age, such assets shall not be distributed outright to such beneficiary but shall be retained by the Trustee hereunder in the Descendant's Trust for the primary benefit of such beneficiary, all as hereinafter provided.

(2) If none of my descendants survive me, such assets shall be allocated and distributed as follows:

(a) All membership units in The Carmen Group shall be distributed to my brother, Fred N. Carmen, if he survives me and if, at the time of my death, he or any trust created by him is a member of The Carmen Group. In default of the foregoing, such membership units shall pass pursuant to Paragraph B(2)(b) of this Section 3.

5

(b)     The trust estate remaining after giving effect to the provisions of Paragraph B(2)(a) of this Section 3 shall be distributed per stirpes to my parents' descendants who survive me.

C.     <u>Funding of Allocation to Beneficiaries</u>. The Trustee is authorized to fund the foregoing allocations of assets among my beneficiaries with dissimilar assets, rather than being required to divide each and every asset among the beneficiaries pro rata based on their proportionate share of the trust.  Further, the Trustee is authorized, but not required, (i) to marshall all membership units or all voting membership units in The Carmen Group, to the portion of the trust estate allocable to a beneficiary who is then a member or employee of The Carmen Group, (ii) to marshall no membership units or all nonvoting membership units of The Carmen Group, to the portion of the trust allocable to any beneficiary who is not then a member or employee of The Carmen Group, (iii) to reorganize The Carmen Group into a voting/nonvoting and/or managing/nonmanaging membership structure to achieve the funding described in the immediately preceding (i) and (ii), it being my intention that any beneficiary who is a member or employee of The Carmen Group may, in the Trustee's discretion, succeed to all of the trust estate's equity and/or voting/controlling/managing power in The Carmen Group, and the Trustee may take into account a beneficiary's age, ability, maturity, past and potential contributions to The Carmen Group, and any other factor the Trustee considers relevant; provided, however, that the Trustee in no event shall marshall such membership units in such a manner so as to overfund or underfund the portion of the trust estate otherwise allocable to any beneficiary hereunder.  The Trustee's decisions and actions shall be final and binding on all persons.

6

## SECTION 4. DESCENDANT'S TRUST:
## TRUST FOR ANY DESCENDANT OF MINE

All assets directed to be held in the Descendant's Trust after my death for the primary benefit of any descendant of mine less than twenty-five (25) years of age (the "primary beneficiary") shall be held as follows:

A.   <u>Discretionary Distribution of Income and Principal</u>.  The Trustee may pay from time to time to or for the benefit of such primary beneficiary and/or such primary beneficiary's descendants from the Descendant's Trust held for such primary beneficiary's benefit such portions of the income and/or principal as the Trustee may determine, pursuant to the provisions of the Discretionary Standards Section below.

B.   <u>Distribution Upon Beneficiary Attaining Age 25</u>.  Upon such primary beneficiary attaining the age of twenty-five (25) years, all assets remaining in the Descendant's Trust for such primary beneficiary shall be distributed outright to such primary beneficiary.

C.   <u>Distribution by Appointment of Such Beneficiary or upon Failure of Appointment</u>.  Upon the death of such primary beneficiary before attaining the age of twenty-five (25) years, all assets remaining in the Descendant's Trust held for such primary beneficiary shall be distributed in such amounts or shares and upon such conditions, in trust or otherwise, as such primary beneficiary shall have appointed by such primary beneficiary's Will executed after the date of this instrument, to or for the benefit of one or more of that group of persons that includes every person who is a descendant of mine, the spouse of a descendant of mine, the surviving spouse of a descendant of mine, or any organization to which gifts are deductible for the

7

purpose of determining federal estate taxes. No purported exercise of this power of appointment shall be valid unless it includes specific reference to this instrument.

Those assets of the Descendant's Trust which such primary beneficiary shall not effectively appoint shall be allocated per stirpes among such primary beneficiary's then living descendants; in default thereof, per stirpes among the then living descendants of the person who is a member of the class comprised of me and my descendants and is said deceased primary beneficiary's most immediate ancestor (living or dead) having one or more descendants then living. All assets allocated to a beneficiary pursuant to the foregoing provisions of this paragraph shall be distributed outright to such beneficiary; provided, however, that if any such beneficiary is then less than twenty-five (25) years of age, such assets shall not be distributed outright to such beneficiary but shall be retained by the Trustee hereunder in trust for such beneficiary's primary benefit, all as provided in this Descendant's Trust. If no descendants of mine are then living, such assets shall be distributed per stirpes to my parents' descendants who are then living.

## SECTION 5. DISCRETIONARY STANDARDS: STANDARDS GOVERNING DISCRETIONARY DISTRIBUTIONS BY TRUSTEE

In this instrument, I have authorized certain discretionary payments of income and/or principal to be made to or for the benefit of designated persons pursuant to the provisions of this Discretionary Standards Section. The Trustee may make such discretionary distributions at such times and in such amounts as in the discretion of the Trustee shall be necessary or appropriate for the health, support, education, maintenance, and comfort of such persons at their accustomed standard of living. My intention is that such distributions shall not be limited to supplying necessities for such persons, but shall maintain them liberally according to

8

their accustomed standard of living, account being taken of their possible desire for travel, owning a home and all other reasonable desires not clearly inconsistent with their accustomed standard of living. In addition, there may be paid to or for the benefit of such persons in order to permit them to enter into or continue in business or professional ventures, and for any other purposes whatsoever, such portions of income and/or principal as the Trustee, in the Trustee's discretion, may from time to time determine. However, the Trustee, based upon information reasonably available to the Trustee, shall make such distributions to any such person for the purposes set forth above only to the extent such person's income, and funds available from others obligated to supply funds for such purposes, are insufficient in the Trustee's opinion for such purposes.

Notwithstanding the provisions of the first paragraph of this Discretionary Standards Section, or any other provision of this instrument, during such time as any person to whom or for whose benefit discretionary distributions of income and/or principal are authorized to be made is acting as a Trustee of any trust hereunder, all such distributions of income and/or principal to or for the benefit of any beneficiary from such trust shall be limited to such distributions as may be reasonably required for the health, support, education or maintenance of such beneficiary. Further notwithstanding the provisions of the first paragraph of this Discretionary Standards Section, or any other provision of this instrument, no such discretionary distributions of income and/or principal shall be made for the support which any person serving as Trustee hereunder is legally obligated to provide to any trust beneficiary, or to defray the cost of any such legal obligation of such person serving as Trustee.

9

## SECTION 6. TRUSTEE

I appoint my brother, FRED N. CARMEN, as Trustee hereunder. In the event of his death, disability, resignation or incapacity to serve as Trustee, I appoint as successor Trustee, and as successor Trustee to fill any vacancy thereafter occurring in such office, the first in the order named who is able and willing to serve of the following:

Such individual or trust company as shall be designated by Fred N. Carmen, such designation to be in a writing that is dated and signed by him;

My attorney, STEPHEN H. GARIEPY, whose present business address is 200 Public Square, Suite 3300, Cleveland, Ohio 44114-2301;

My uncle, SHELDON BURNS;

Such individual or trust company as shall be designated by the last (until that point in time) serving Trustee, such designation to be in a writing that is dated and signed by such Trustee (it being my intention that there may be one or more successive "last serving" Trustees, each having the power to designate his successor, who thereupon shall also become a last serving Trustee with the same power to designate his successor);

Such person as shall be designated by a majority of the then current adult beneficiaries who are not incapacitated;

NATIONAL CITY BANK, of Cleveland, Ohio, or its corporate successor, provided, a majority of the then current adult beneficiaries under this Trust Agreement shall have the power, exerciseable at any time to (i) designate a different trust company or (ii) remove National City Bank or any other trust company and to appoint a replacement trust company as Trustee.

The original Trustee, and any successor Trustee named above or designated pursuant to the preceding provisions of this Section 6, shall serve without bond. Except as otherwise expressly indicated, each successor Trustee shall have all the powers and immunities herein granted to the original Trustee.

10

## SECTION 7.  TRUSTEE'S DUTIES AND POWERS

All the trusts hereunder shall be held subject to the following terms and conditions, and the Trustee shall have, in addition to any other powers granted to the Trustee by law, the following powers:

A.  <u>Investments</u>.  The Trustee shall have power to improve, lease for any term or perpetually, rent, sell, exchange, grant and exercise options to buy, any property at any time held hereunder; to invest and reinvest in real or personal property of any kind, and to retain as a proper investment any such property, whether originally a part of the trust estate or subsequently acquired; and to exercise the powers granted in this Paragraph A. without being limited by any statute or judicial decision, whenever enacted or announced, imposing requirements as to assets in which investments may be made or the retention or diversification of investments; provided, however, that any loan made by the Trustee under this general investment power shall only be for adequate interest and security (which shall be presumed to exist in the case of any investment in any publicly-traded debtor securities). The foregoing powers shall include (without limitation of those powers) the power to sell any trust assets to, and/or purchase assets from, me, any descendants of mine, and/or the estate of any such person, whether or not such person is then acting as a Trustee hereunder. Furthermore, the foregoing power shall include the power to invest in any shares or participations in any common trust funds, administered by any corporate Trustee acting hereunder in its fiduciary capacity, and to invest in any security issued by any such corporate Trustee acting hereunder or any of its subsidiaries.

The Trustee shall be authorized to employ any investment manager for the purpose of managing the trust assets, and pursuant to such employment, the Trustee may delegate to any such investment manager discretionary authority with respect to investment and reinvestment of the trust assets.

The Trustee shall be authorized to buy, sell and trade in securities of any nature, including short sales, on margin, and for such purposes may maintain and operate margin accounts with brokers, and may pledge any securities held or purchased by the Trustee with such brokers as security for loans and advances made to the Trustee.

B.  <u>Accumulated Income</u>.  Any accumulated income which shall not be paid to the beneficiaries hereunder by virtue of the provisions elsewhere contained herein may be added from time to time by the Trustee to the principal of the trust from which such income derived.

C.  <u>Borrowing</u>.  The Trustee shall have power to borrow money from any institution or person, including the Trustee, for the benefit of any trust, and to pledge or mortgage any part or all of the trust estates as security therefor.

11

D.   Claims.   The Trustee shall have power to arbitrate, defend, enforce, release or settle any claim of or against any trust.

E.   Voting; Reorganization.   The Trustee shall have power to vote, in person or by proxy, upon all securities held as a part of the trust estates; to exercise, buy or sell subscription and conversion rights and participate in reorganizations, recapitalizations, consolidations, mergers, exchanges, foreclosures, liquidations and creditors' and bondholders' agreements.

F.   Apportionment to Income and Principal.   The Trustee shall have power to allocate receipts, disbursements and losses to principal or to income, in accordance with generally accepted accounting practices. In addition, the Trustee shall have the power to allocate any annuity payment, or any lump sum or periodic payment from a pension or profit-sharing plan in which I was a participant, received by any trust held hereunder to income and/or principal as the Trustee, in the Trustee's sole discretion, deems advisable, irrespective of the treatment of said payment for income tax purposes.

G.   Division and Distribution of Property in Kind.   In any cases in which the Trustee may be required physically to divide property held in the trust estates into parts, shares or trusts, or to distribute the same, the Trustee may, in the Trustee's discretion, make such division or distribution in kind or in money or partly in kind and partly in money, and may allocate dissimilar property and undivided interests in property to different parts, shares or trusts, without respect to the income tax basis of such property. I specifically excuse the Trustee from any duty of impartiality with respect to the income tax basis of such property. If necessary to value property to be divided or distributed, it shall be valued at the then current fair market value.

H.   Power to Amortize Mortgage Out of Income.   I authorize the Trustee hereunder to apply all or any part of the income of any trust hereunder to the amortization of any mortgage or mortgages which may encumber any real estate owned wholly or in part by such trusts, and may prepay to any extent any amortization installments. Any amortizing payments on a mortgage which encumbers real estate owned jointly by two or more trusts hereunder shall be made from each individual trust in the proportion that the then value of such encumbered real estate which is owned by such individual trust bears to the then full value of such encumbered real estate. The term "net income," wherever used in this document, shall mean net income remaining after any such amortization installments.

I.   Assets May Be Held Collectively.   All the assets held in trust for the primary benefit of any one person shall constitute a separate trust, and all such assets shall be administered and accounted for as a separate trust. Notwithstanding, however, all the assets in the several trusts may be held collectively for all the beneficiaries with no physical division thereof into trusts until such time as distribution is actually made by the Trustee.

12

J.    <u>Nominee</u>. The Trustee may take and hold all securities or other personal property in bearer form, in the name of any Trustee, or in the name of a nominee, with or without disclosing any fiduciary relationship, but the Trustee shall be liable for any wrongful act of the nominee with respect to such assets.

K.    <u>Employment of Agents</u>. I authorize the Trustee to employ and pay reasonable compensation to agents, investment counsel and attorneys, including the Trustee and any person, partnership, limited liability company, corporation or other entity with which the Trustee may be associated. The foregoing authority shall include, without limitation thereof, the power to authorize any Trustee, person or persons to withdraw funds from any bank account maintained by the trusts and/or to have access to any safe deposit box maintained by the trusts. In addition, any corporate Trustee acting hereunder is authorized to appoint and remove by written instrument, containing such terms and conditions as any such corporate Trustee may deem appropriate, any natural or legal person or persons as special Trustee or special Trustees to hold all or any part of any real property or other interest in property held in trust hereunder which any such corporate Trustee determines, in its sole discretion, it cannot or, because of legal limitations on its powers, it deems inadvisable to hold as Trustee hereunder, and any such special Trustee, except as specifically limited by the appointing instrument, shall have all the powers, authority and discretion herein granted to any such corporate Trustee with respect to the trust property held by any such special Trustee. No Trustee shall be liable for any neglect, omission, or wrongdoing of such agents, investment counsel, attorneys, or special Trustees, provided that any such corporate Trustee shall have exercised reasonable care in the selection of any such special Trustee.

L.    <u>Instruments</u>. I authorize the Trustee to execute and deliver all necessary or proper deeds or other instruments.

M.    <u>Distribution to Minors and Incapacitated Persons</u>. During the minority or incapacity of any beneficiary hereunder, I authorize the Trustee, in the Trustee's discretion, to pay any sum distributable to such beneficiary, without liability to the Trustee, by paying the sum to such beneficiary or to any person whomsoever (including an eligible custodian selected by the Trustee for any such beneficiary under the Ohio Transfers to Minors Act) for the use and benefit of such beneficiary, whether or not such person shall be the guardian of such beneficiary.

N.    <u>Nonliability of Purchasers and Lenders</u>. No purchaser from nor lender to the Trustee need see to the application of the purchase or loan money to the purposes of the trust estates, but the receipt of the Trustee shall be a complete discharge to any such person.

O.    <u>Books of Account</u>. The Trustee shall keep full books of account showing the condition of each trust, which shall be open at all reasonable times to the inspection of the respective beneficiaries of said trusts.

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHRYN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

P.    Holding and Transferring Real Estate.    The Trustee shall have power to take, hold and convey title to real estate or interests therein in the name of any Trustee or in the name of the nominee of the Trustee without disclosing the trusts; and in accepting title to the real estate neither the Trustee nor the nominee shall be held to have assumed the payment of any encumbrances thereon. All conveyances executed and delivered by the Trustee or the nominee shall be without covenants of warranty except as against the Trustee's or nominee's own acts.

Q.  ·  Exculpatory Provision.    The Trustee hereunder shall not be personally liable upon any contract of indebtedness of or claims against said trust estates or upon a mortgage, trust deed, note or other instrument executed under the provisions hereof.

R.    Protection on Distributions.    The Trustee shall be protected in continuing to make distributions of income or principal until the Trustee shall have actual knowledge of the happening of an event such as attainment of a certain age, death or other occurrence which would affect such distributions.

S.    Nonliability of Trustee for Acts of Predecessor Fiduciary.    Any Trustee or successor Trustee may accept and rely upon any accounting made by or on behalf of the Executor of my estate or any predecessor Trustee hereunder, and any statement or representation made by any such fiduciary as to the assets comprising this trust estate or as to any other fact bearing upon the prior administration of my estate or the trusts. A Trustee or successor Trustee shall not be liable for having accepted and relied upon such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue. A Trustee or successor Trustee shall not be liable for any act or omission of any predecessor fiduciary, nor have a duty to enforce any claims against any predecessor fiduciary on account of any such act or omission.

T.    Protective Provision.    No interest in income or principal shall be alienated, encumbered or otherwise disposed of by any beneficiary while in the possession and control of the Trustee.

U.    Anti-Perpetuities Clause.    This instrument shall not be construed as postponing the distribution of any trust hereunder beyond the period of twenty-one (21) years less one day from the date of the death of the last survivor of my descendants presently in being and me. Upon the expiration of such period, the assets of each trust then being held hereunder shall be paid to its primary beneficiary (as defined in Section 4 hereof).

V.    Resignation by Trustee and Designation of Successor Trustee.    Any Trustee of any trust being held under this instrument may resign at any time as Trustee by an instrument in writing signed, dated, and delivered to the successor Trustee designated herein, such resignation to become effective upon the written acceptance of said trusteeship by such designated successor Trustee. If no successor Trustee is designated, or if none of the designated successor Trustees accepts such trusteeship, then any Trustee serving hereunder may resign by an instrument in writing signed, dated, and mailed to

14

each adult beneficiary to whom the Trustee is then directed or authorized to pay net income of such trust, such resignation to be effective upon the designation of a successor Trustee by a majority in number of the beneficiaries entitled to receive notice of such resignation. Any Trustee designated pursuant to the foregoing provisions of this paragraph shall serve without bond.

W.   Decision of Majority of Trustees to Govern; Trustee's Liability for Acts of Co-Trustee. Except as is otherwise expressly provided in this document, when there are three or more Trustees authorized to act in any particular, the agreement of a majority of the Trustees shall be required, and when there are two Trustees authorized to act in any particular, the agreement of both Trustees shall be required. Each Trustee shall be liable only for the Trustee's own acts in the administration of these trusts. No Trustee shall be in any way or to any extent liable to the beneficiaries or others for anything done hereunder by a Co-Trustee to which the Trustee did not actively consent or of which the Trustee did not actively approve.

X.   Subchapter S Stock. If at any time stock in any corporation with respect to which an election under Section 1362 of the Internal Revenue Code to be an S corporation is in effect ("subchapter S stock") is to be allocated to (or is then held in) a trust under this Agreement (a "Recipient Trust"), and if the trust holding such stock otherwise would cease to be a "permitted stockholder" within the meaning of Section 1361(c)(2), then:

(1)   The Trustee of the Recipient Trust may in the Trustee's discretion make an appropriate election to qualify such a Trust as an "electing small business trust" under Section 1361(e) (if the trust would otherwise so qualify) or, if no such election is made,

(2)   Such stock shall be allocated to (or held in) a separate trust for the primary beneficiary of the Recipient Trust. Each such respective separate trust holding subchapter S stock shall be held under the terms of the respective Recipient Trust; provided, only to the extent necessary to preserve the status of such corporation as an S corporation under federal tax law then in effect, each such separate Trust shall be subject to the following additional rules (and, to the extent necessary, such rules shall supersede any conflicting provisions applicable to trusts held under this Agreement):

(a)   The Trustee shall pay the income of such separate trust to its primary beneficiary, and shall not make principal payments to any person other than such primary beneficiary during the life of such primary beneficiary.

(b)   If, upon the death of the primary beneficiary, his separate Trust holds subchapter S stock, all accrued or undistributed income of his trust shall be paid to his estate.

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

It is my intention that each separate trust established under this subparagraph (2) shall qualify for treatment as a "qualified subchapter S trust" as defined at Section 1361(d).

Y.  **Business Powers.**  To continue or to permit the continuation of any business, incorporated or unincorporated, in which the trust has acquired an interest by gift, inheritance or purchase from me or any person related to or affiliated in any manner with me, my estate or any current or former beneficiary hereunder; to liquidate, sell or dissolve such business at such time and upon such terms and conditions as the Trustee may determine; to invest additional sums in any such business even to the extent that any one or more of all of the trust estates hereunder may be invested largely or entirely in any such business; to incorporate or otherwise change the legal organization of such business; to form or reform a general or limited partnership or limited liability company with others (including any Trustee or beneficiary hereunder or any person or entity related to or affiliated in any manner with any Trustee or beneficiary hereunder); to determine whether the trust shall be or become a general or limited partner of any partnership or a managing or nonmanaging member of a limited liability company; to act as or to select other persons (including any Trustee or beneficiary hereunder or any person or entity related to or affiliated in any manner with any Trustee or beneficiary hereunder) to act as directors, officers, managing partners, managing members or employees of any such business, such persons to be entitled to receive reasonable compensation in addition to any compensation as a Trustee hereunder; and to make such other arrangements in respect to such business as the Trustee shall determine;

Z.  **Environmental Matters.**  To investigate, prevent and remediate violations or possible violations of federal, state or local law regarding substances posing a hazard to the environment or to human health which may be applicable to any trust property; to undertake such actions prior to the formal enforcement of such laws by any federal, state or local agency against trust property; and to charge all expenses associated with any such investigation, prevention or remediation, including the fees of consultants and counsel, against the income or principal of the trust estate holding the property;

AA.  **Partnership Adjustments.**  To settle and adjust any partnership or limited liability company interest upon such terms as the Trustee shall deem proper, to continue any partnership or limited liability company, and to subject to the risks of the business the assets representing each trust estate's interests therein, for such period and upon such terms as the Trustee shall determine, and to increase the participation of any trust estate in any partnership or limited liability company; and no change in the constitution of such partnership or limited liability company by the death or retirement of any partners or members or the admission of any additional partners or members shall affect the powers herein granted;

BB.  **New Entities.**  To participate in any new partnership or limited liability company upon such terms as the Trustee shall determine and to act as a general or limited partner or a managing or nonmanaging member;

16

CC.  <u>Conflict of Interests.</u>  I intentionally have granted broad powers in this Trust Agreement to enable the Trustee to manage and dispose of the property comprising each trust estate in such manner as the Trustee, acting with sole discretion, may deem appropriate under the circumstances, and I recognize that in the exercise of such powers, the Trustee may be placed in a position of having actual or potential conflicting interests, directly or indirectly, as a fiduciary under this Trust Agreement, as an individual or in another capacity, or by relationship to or affiliation with other individuals or entities. I expressly waive each and every such conflict of interest, whether actual or potential or direct or indirect, and in specific furtherance of such waiver, but not in limitation of it, I expressly provide that no Trustee shall be prevented from serving in such capacity or prevented from or required to obtain court approval for performing any function or exercising any authority herein conferred upon such Trustee by reason of the fact that such Trustee, or any person or entity to whom or with which such Trustee is related or affiliated in any manner, is or may be interested as a director, officer, employee, shareholder, partner, member, manager, co-owner or otherwise of any corporation, partnership, limited liability company or other business enterprise or property interest in which any trust estate hereunder has an interest, or of any corporation or other business enterprise acting as or affiliated with a Trustee hereunder, or as a beneficiary or a Personal Representative, Trustee or other fiduciary with respect to any estate or trust which may be a party to a transaction or other dealing with such trust estate, regardless of any such conflict of interest.

DD.  <u>Business Holdings.</u>  I anticipate that the trust property may include substantial interests in one or more business enterprises which may be speculative in nature, and I intentionally have granted broad powers in this Trust Agreement to enable the Trustee to manage and dispose of such business interests in such manner as the Trustee, acting with sole discretion, may deem appropriate under the circumstances. In furtherance of the free exercise of such powers by the Trustee, I expressly waive and negate any duty on the part of the Trustee to diversify the investments comprising the trust estates held hereunder from time to time and I expressly provide that each Trustee hereunder shall be deemed to have acted within the scope of his or her authority, to have exercised reasonable care, diligence and prudence, and to have acted impartially as to all persons interested unless the contrary be proved by affirmative evidence, and in the absence of such proof shall not be liable for any loss arising from depreciation or shrinkage in value of any property comprising any trust estate from time to time.

EE.  <u>Trustee's Duty to Notify and Provide Information.</u>

(1)  To the full extent permitted by law, I hereby waive any provision of the Ohio Trust Code or any similar law of any jurisdiction that would otherwise require the Trustee to perform any one or more of the following acts at any given time or times:

(a)  Notify any beneficiary of (i) the existence of any trust established hereunder, (ii) the acceptance of the trusteeship by the Trustee,

17

(iii) the Trustee's identity (including, without limitation, the Trustee's name, address and telephone number), (iv) my identity, (v) the right of any beneficiary to request or receive a copy of this Trust Agreement and the Trustee's reports, (vi) any change in the method or rate of determining the Trustee's compensation, and (vii) the division or consolidation of any trust or trusts established hereunder; and

      (b)    Furnish to any beneficiary, whether periodically or upon request, (i) a copy of this Trust Agreement and (ii) the Trustee's reports and other information.

For purposes of this Paragraph EE(1), the term "Trustee's reports" shall mean those reports described in Section 5808.13(C) of the Ohio Revised Code (as such Section or any successor or similar Section is in effect from time to time).

      (2)    The foregoing to the contrary notwithstanding, the Trustee shall perform any act described in Paragraph EE(1) above if and to the extent that (a) any other provision of this Trust Agreement requires the Trustee to perform such act or (b) the Trustee determines, in the Trustee's sole discretion, that the performance of such act is appropriate. The Trustee shall have no liability for any determination made pursuant to the provisions of clause (b) of the immediately preceding sentence unless the Trustee is proven to have acted in bad faith or with willful disregard of its duties as a fiduciary.

## SECTION 8. LIFE INSURANCE

The owner of any policies of insurance payable to the Trustee hereunder shall have the right to exercise any right or option owned or possessed by such owner under said policies, without the consent of the Trustee. In making payment upon such policy, the insurance company issuing the same or obligated thereon shall not be responsible for the proper application or disposition of any fund paid to the Trustee, but the receipt of the Trustee shall be a complete discharge to such insurance company. The Trustee shall not be obligated to pay the premiums on said policies.

## SECTION 9. ADD PROPERTY; TRUST IS IRREVOCABLE

I reserve the right, for myself and other persons, to add other property to this trust by making lifetime transfers to the Trustee with the consent of the Trustee, and by making

18

testamentary or other transfers of property to the Trustee without the consent of the Trustee. I reserve no right to amend or revoke this trust instrument.

### SECTION 10. OHIO LAW CONTROLS

The validity, effect and interpretation of this instrument and of the property interests herein created shall be controlled by the laws of the State of Ohio.

### SECTION 11. TRUSTEE FEES

Reasonable compensation may be paid to any individual serving as Trustee hereunder, unless such individual waives the right to receive compensation. The corporate Trustee's compensation for its ordinary services hereunder shall be at the rates prescribed for similar trust services in its standard compensation schedule in effect at the time of each charging of such compensation, unless a different fee arrangement is agreed to in writing by the corporate Trustee. The corporate Trustee shall receive reasonable additional compensation for any extraordinary services requested or required. The compensation hereunder shall be deductible by the Trustee at such time or times and from such source or sources as the Trustee may reasonably determine.

### SECTION 12. SURVIVORSHIP REQUIREMENT

Should any person or persons who would take under this instrument, but for this provision, fail to survive me by more than ninety (90) days, such person or persons shall be deemed to have predeceased me for the purposes of construing all of the terms of this instrument.

### SECTION 13. MERGER AND DIVISION OF TRUSTS

If because of differences in dispositive or administrative provisions, advisability of separate investment policies or other differences with respect to interests in a single trust, it is advisable to divide any trust into separate trusts, or for tax reasons, it is important or necessary to

19

separate assets otherwise allocable to a single trust, the Trustee may, in the Trustee's discretion, so divide such trust at any time during my lifetime or thereafter. For example, if only part of a trust consists of generation-skipping tax exempt assets, the Trustee may divide it so that such property is a separate trust.

Following my death, if the provisions under which any trust created herein is held and/or disposed of shall be or shall become substantially the same as the provisions under which another trust established by me is held and/or disposed of, and if the Trustee and the beneficiaries of each such trust shall be the same, then the Trustee hereunder shall be authorized to (i) terminate such trust held hereunder and distribute all of the assets therein to the Trustee under such other trust, and the assets so distributed shall be merged into, and treated as an addition to, such other trust and shall be held and disposed of as a part thereof, or (ii) terminate such other trust and distribute all of the assets thereof to the Trustee under this trust instrument, in which event I direct the Trustee hereunder to accept such assets, the assets so distributed to the trusts held hereunder to be merged into, and treated as an addition to, the trusts held hereunder and disposed of as a part hereof.

The Trustee, in exercising all such discretion, shall consider economy of administration, convenience to the beneficiaries, tax consequences and any other factor the Trustee considers important.

## SECTION 14. INCOME, ESTATE AND GENERATION-SKIPPING TAXES

A. <u>Income Taxes</u>. During such time as this trust is a grantor trust under Section 671 of the Internal Revenue Code, as may be amended, the Trustee shall pay all federal, state and local income taxes attributable to the trust's income.

20

B.   Estate Taxes.  The Trustee is authorized to take such steps and enter into such transactions as may reduce or eliminate the federal and state estate and inheritance taxes imposed on my estate.   Such transactions may include, for example, private annuities and sales for self-cancelling installment obligations.

C.   Generation-Skipping Taxes.  It is my intention to eliminate (or to reduce as fully as allowed by law) any "generation-skipping transfer taxes" on transfers of property pursuant to this trust instrument. Accordingly, notwithstanding any other provision of this trust instrument:

(1)   Division of Trusts into Separate Trusts.  The Trustee shall have the authority first to divide into separate trusts the rights to receive divisions or distributions into what would otherwise have been one trust, make any such divisions or distributions into such separate trusts, and then make the appropriate allocations of any available generation-skipping transfer tax exemption, in order to allocate effectively different types of GST exempt property to separate trusts so that later distributions of such property will have an inclusion ratio of zero (so as not to generate any generation-skipping transfer tax).

(2)   General Vesting.  In order to minimize the total amount of all transfer taxes due with respect to a transfer from a trust held under the Section titled "Descendant's Trust: Trust for Any Descendant of Mine," I hereby vest such a trust in its primary beneficiary by granting such beneficiary upon his or her death the power to appoint such trust to or for the benefit of any person, including his or her estate, but only to the extent that such vesting will reduce the combined amount of (i) the sum of the federal and any other generation-skipping transfer taxes due as a result of a transfer from such trust, and (ii) the sum of all estate, inheritance and other death taxes (except generation-skipping transfer taxes) due as a result of such beneficiary's death.

Any parts of his or her vested trusts which such beneficiary does not effectively appoint shall be treated as provided in this trust instrument for disposition upon his or her death.

21

## SECTION 15.  SPECIAL POWER

A.    Designation of Special Power Holder.

(1)    The initial Special Power Holder shall be my attorney, STEPHEN H. GARIEPY, whose present business address is 200 Public Square, Suite 3300, Cleveland, Ohio 44114-2301.   In the event that STEPHEN H. GARIEPY shall become unable to exercise the Special Power (as defined in Paragraph B of this Section 15), then the Special Power Holder shall be the person or persons designated by STEPHEN H. GARIEPY.   In the event that STEPHEN H. GARIEPY shall be unable to exercise the Special Power and there is no one designated by him who is able to exercise the Special Power (such event being hereinafter referred to in this Paragraph A(1) as a "Vacancy"), then the Special Power Holder (and any successor thereto) shall be such person or persons as shall be designated by the Board of Directors or other governing body of the law firm of Hahn Loeser & Parks LLP, of Cleveland, Ohio, or any successor thereto.   During any period following a Vacancy in which said law firm shall not have designated a person as Special Power Holder who is able to exercise the Special Power, the Special Power shall be exercisable by the then acting chief executive officer, managing partner or equivalent officer of said law firm.   Any person or law firm given the power to designate a Special Power Holder may designate a successor or a list of successors to hold the Special Power, including any partner, shareholder, fellow shareholder, employee or fellow employee of such person or law firm, and may make such designation in advance of a Vacancy, which designated may be amended or revoked at any time prior to becoming effective.   Any such designation or amendment or revocation of a designation shall be made by written instrument delivered to the Trustee.

(2)    Any person designated pursuant to this Paragraph A as successor Special Power Holder shall be a nonadverse party (as that term is defined in Section 672 of the Internal Revenue Code, as such Section or any successor or similar Section is in effect at the time of such designation).   In no event shall any of the following be a Special Power Holder:   (a) any of my parents' descendants (including myself) or any spouse of any such person, (b) any person who is an adverse party (as that term is defined in Section 672 of the Internal Revenue Code, as such Section or any successor or similar Section is then in effect) or (c) any person who, at the time such person would otherwise be the Special Power Holder, is serving as Trustee hereunder.   If any Special Power Holder shall become an adverse party or Trustee hereunder, then, for purposes of this Paragraph A, such Special Power Holder shall be deemed to be unable to exercise the Special Power.

B.    Grant of Special Power.   Any at time or times, the Special Power Holder shall have the power (referred to as the "Special Power"), acting in a non-fiduciary capacity, without the consent of the Trustee or any other person and without the

22

requirement of any court approval, to direct the Trustee to lend to me any part or all o the principal or income or both of each and every trust estate held hereunder, without any requirement that I provide adequate security for any such loan notwithstanding any provision of Section 7 hereof to the contrary. The Trustee shall be obligated to follow any directions made by the Special Power Holder pursuant to this Paragraph B. Any Special Power Holder may exercise the Special Power multiple times. The Special Power shall be exercisable only during my lifetime; provided that, to the extent that the Special Power is exercised during my lifetime, the exercise of the power shall not be revoked by reason of my death.

    C.    <u>Release or Termination of Special Power</u>. Any Special Power Holder may at any time, by written instrument delivered to the Trustee, permanently release the Special Power. If not previously released as provided in this Paragraph C, the Special Power shall terminate upon my death. In the event that the Special Power Holder shall permanently release the Special Power or upon my death, whichever shall first occur, there shall no longer be a Special Power Holder.

## SECTION 16. DEFINITIONS

Where necessary or appropriate to the meaning hereof, the singular and plural shall be interchangeable, and words of any gender shall include all genders. "Descendants," "children" and words of similar purport include any person whose relationship to the ancestor designated is created by or through lawful birth or adoption, whenever occurring. No descendant or child shall lose such descendant's or such child's status as such through adoption by another person. A person in gestation, which person is later born alive, shall be regarded in this instrument as a person in being during the period of gestation.

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

IN WITNESS WHEREOF, the undersigned have signed this Trust Agreement, in duplicate, on the day and year first above written.

Signed and acknowledged
in the presence of:

_____

_____

_____

_____

_____
Eric H. Carmen

_____
Fred N. Carmen, Trustee

24

Schedule A

\_\_\_\_ membership units in The Carmen Group, LLC

_____

_____



IN THE COMMON PLEAS COURT
PROBATE
CUYAHOGA COUNTY, OHIO

ERIC H. CARMEN                )     CASE NO.  2015 ADV 211860
                             )
              Plaintiff,      )     JUDGE ANTHONY J. RUSSO
                             )
v.                           )
                             )     **NOTICE OF SUBSTITUTION OF**
FRED N. CARMEN,              )     **INTERVENING PLAINTIFF**
                             )
              Defendant.      )
                             )

Amy Carmen, Trustee of the Carmen Family Gift Trust ("Trust") hereby gives notice that

on June 13, 2017, per the terms of Section 6 of Trust, she was lawfully appointed Trustee of Trust

(See Ex. 1). On this day also, Jonathan Berns, then-trustee of Trust and Intervening Plaintiff in the

above-captioned matter, resigned. (See Ex. 2).

Accordingly, in that Mr. Berns has resigned, Amy Carmen, current Trustee of Trust is the

proper party to the Intervening Complaint for Legal and Equitable Relief filed on July 25, 2016.

Respectfully submitted,

_____

Joel Levin          (0010671)
Aparesh Paul        (0077119)
Mark Mikhaiel       (0091656)
LEVIN & ASSOCIATES CO., L.P.A.
The Tower at Erieview, Suite 1100
1301 East 9th Street
Cleveland, Ohio 44114
(216) 928-0600
(216) 928-0016 (fax)
jl@levinandassociates.com
ap@levinandassociates.com
mm@levinandassociates.com

Attorneys for Amy Carmen, Trustee



GNOT

**Exhibit B-1**

## SERVICE

A copy of the foregoing has been served on this 11th day of September, 2017 by Electronic Mail upon the following:

Monica A. Sansalone
Lori Brown
Gallagher Sharp
Sixth Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115
msansalone@gallaghersharp.com
lbrown@gallaghersharp.com

Robert Glickman
McCarthy Lebit Crystal & Liffman
1800 Midland Building
101 W. Prospect
Cleveland, OH 44115
rtg@mccarthylebit.com

Andrew Goldwasser
Ciano & Goldwasser, LLP
1610 Midland Building
101 Prospect Ave. West
Cleveland, OH 44115
asg@c-g-law.com

Adam Fried
Adriann McGee
Reminger Co., L.P.A.
1400 Midland Building
101 Prospect Ave. West
afried@reminger.com
amcgee@reminger.com

Mark Mikhaiel          (0091656)
*One of the Attorneys for Amy Carmen, Trustee*

## CARMEN FAMILY GIFT TRUST
## APPOINTMENT OF TRUSTEE



**WHEREAS:**

**1.** The Carmen Family Gift Trust (the "Trust") was created by Trust Agreement dated July 11, 2007 (the "Agreement"), by and between Eric H. Carmen, as Grantor, and Fred N. Carmen, as trustee.

**2.** Pursuant to Section 6 of the Agreement, upon Fred N. Carmen's death, disability, resignation or incapacity to serve as Trustee, the successor trustee would be,

"the first in the order named who is able and willing to serve of the following:

Such individual or trust company as shall be designated by Fred N. Carmen, such designation to be in a writing that is dated and signed by him;

My attorney, STEPHEN H. GARIEPY, whose present business address is 200 Public Square, Suite 3300, Cleveland, Ohio 44113-2301; ·

My uncle, SHELDON BURNS [sic];

Such individual or trust company as shall be designated by the last (until that point in time) serving Trustee, such designation to be in a writing that is dated and signed by such Trustee (it being my intention that there may be one or more successive "last serving" Trustees, each having the power to designate his successor, who thereupon shall also become a last serving Trustee with the same power to designate his successor);

Such person as shall be designated by a majority of the then current adult beneficiaries who are not incapacitated"

**3.** Pursuant to Section 6 of the Agreement, Fred N. Carmen appointed Sheldon Berns as successor trustee and resigned as trustee and Sheldon Berns accepted his appointment effective as of December 29, 2015.

**4.** By Notice of Resignation of Trusteeship and Acceptance of Successor Trusteeship dated January 26, 2016, Sheldon Berns appointed Jonathan Berns as successor trustee and resigned as trustee and Jonathan Berns accepted his appointment.

**5.** By Renunciation of Trustee dated _MAY 10_, 2017, Stephen H. Gariepy renounced any right he may have had to serve as trustee of each trust created under the Agreement.

**6.** Eric H. Carmen is the sole adult beneficiary to whom the trustee is directed or authorized to pay net income of the Trust.

**7.** By Resignation of Trustee dated _JUNE 13_, 2017, Jonathan Berns resigned as trustee of each trust created under the Agreement, effective upon delivery of the Resignation of Trustee to Eric H. Carmen and upon the designation of a successor trustee by Eric H. Carmen.

**8.** Pursuant to Section 6 of the Agreement, Eric H. Carmen intends to appoint Amy Carmen as trustee of each trust created under the Agreement.

**NOW THEREFORE,** in consideration of the foregoing premises, Eric H. Carmen hereby appoints Amy Carmen as trustee of each trust created under the Agreement.

Dated:  June            , 2017

[L.S.]
ERIC H. CARMEN

STATE OF          )
Ohio
          ) ss.:

COUNTY OF        )
Cuyahoga

On the 13 day of  June in the year 2017 before me, the undersigned, a Notary Public in and for said State, personally appeared ERIC H. CARMEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Signature and Office of individual taking
acknowledgment

GERALDINE M. SNYDER
NOTARY PUBLIC, STATE OF OHIO
PORTAGE COUNTY
My Commission Expires 3/14/2018

## CARMEN FAMILY GIFT TRUST

### ACCEPTANCE OF APPOINTMENT OF TRUSTEE

Amy Carmen hereby acknowledges receipt of the foregoing Appointment of Trustee of the Carmen Family Gift Trust under agreement dated July 11, 2007 and accepts her appointment as trustee of each trust created under the Agreement.

Dated June  13  , 2017

[L.S.]
AMY CARMEN

NY 248514357v3

## CARMEN FAMILY GIFT TRUST
## RESIGNATION OF TRUSTEE

**WHEREAS:**

**1.** The Carmen Family Gift Trust (the "Trust") was created by Trust Agreement dated July 11, 2007 (the "Agreement"), by and between Eric H. Carmen, as Grantor, and Fred N. Carmen, as trustee.

**2.** Pursuant to Section 6 of the Agreement, upon Fred N. Carmen's death, disability, resignation or incapacity to serve as Trustee, the successor trustee would be:

"the first in the order named who is able and willing to serve of the following:

Such individual or trust company as shall be designated by Fred N. Carmen, such designation to be in a writing that is dated and signed by him;

My attorney, STEPHEN H. GARIEPY, whose present business address is 200 Public Square, Suite 3300, Cleveland, Ohio ............ : ·

My uncle, SHELDON BURNS [sic];

Such individual or trust company as shall be designated by the last (until that point in time) serving Trustee, such designation to be in a writing that is dated and signed by such Trustee (it being my intention that there may be one or more successive "last serving" Trustees, each having the power to designate his successor, who thereupon shall also become a last serving Trustee with the same power to designate his successor);

Such person as shall be designated by a majority of the then current adult beneficiaries who are not incapacitated"

**3.** Pursuant to Section 6 of the Agreement, Fred N. Carmen appointed Sheldon Berns as successor trustee and resigned as trustee and Sheldon Berns accepted his appointment effective as of December 29, 2015.

**4.** By Notice of Resignation of Trusteeship and Acceptance of Successor Trusteeship dated January 26, 2016, Sheldon Berns appointed Jonathan Berns as successor trustee and resigned as trustee and Jonathan Berns accepted his appointment.

**5.** By Renunciation of Trustee dated _MAY_ _10_, 2017, Stephen H. Gariepy renounced any right he may have had to serve as trustee of each trust created under the Agreement.

**6.** Paragraph V of Section 7 provides, in relevant part, as follows:

"Any Trustee of any trust being held under this instrument may resign at any time as Trustee by an instrument in writing signed, dated, and delivered to the successor Trustee designated herein, such resignation to become effective upon written acceptance of trusteeship by such designated successor Trustee. If no successor Trustee is designated, or if none of the designated successor Trustees accepts such trusteeship, then any Trustee serving hereunder may resign by an instrument in writing signed, dated, and mailed to each adult beneficiary to whom the Trustee is then directed or authorized to pay net income of such trust, such resignation to be effective upon the designation of a successor Trustee by a majority in number of the beneficiaries entitled to receive notice of such resignation."

**EXHIBIT**

tabbies

2

**7.** Eric H. Carmen is the sole adult beneficiary to whom the trustee is directed or authorized to pay net income of the Trust.

**8.** The undersigned, Jonathan Berns, hereby intends to resign as trustee of each trust created under the Agreement, effective upon delivery of this instrument to Eric H. Carmen and upon the designation of a successor trustee by Eric H. Carmen.

**NOW THEREFORE,** Jonathan Berns, hereby resigns as trustee of each trust created under the Agreement, effective upon delivery of this instrument to Eric H. Carmen and upon the designation of a successor trustee by Eric H. Carmen.

Dated as of: June *13th*, 2017

JONATHAN BERNS

STATE OF **HIO** )

) ss.:

COUNTY OF **Cuyahoga**

On the *13* day of June in the year 2017 before me, the undersigned, a Notary Public in and for said State, personally appeared JONATHAN BERNS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Signature and Office of individual taking acknowledgment

PAUL GREENBERGER, Attorney
Notary Public - State of Ohio
My Commission has no expiration date
Sec. 147.03 R.C.

**CARMEN FAMILY GIFT TRUST**

**ACKNOWLEDGEMENT OF
RECEIPT OF RESIGNATION OF CO-TRUSTEE**

The undersigned hereby acknowledges receipt of the foregoing Resignation of Trustee of each trust created under the Agreement.

[L.S.]
ERIC H. CARMEN



## IN THE COMMON PLEAS COURT
## PROBATE
## CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| ERIC H. CARMEN | ) | CASE NO. 2015 ADV 211860 |
| | ) | |
| Plaintiff, | ) | JUDGE ANTHONY J. RUSSO |
| v. | ) | |
| | ) | **MOTION TO SUBSTITUTE** |
| FRED N. CARMEN, | ) | **SUCCESSOR TRUSTEE FOR PRIOR** |
| | ) | **TRUSTEE** |
| Defendant. | ) | |

Amy Carmen, as Successor Trustee of Carmen Family Gift Trust ("Trust"), hereby moves this Honorable Court to be substituted as a party in this case. This motion is made perhaps unnecessarily, as there has been a notice of substitution of parties already filed, and that notice represents the reality of who the trustee is: namely, under the clear terms of the Trust itself, once Jonathan Berns resigned, Amy Carmen succeeded per the terms of the Trust as successor trustee.

Certainly, the reality on the ground is that the trustee for all purposes has fiduciary duties and legal ownership of the trust and its assets. While this is well-recognized at law, its seems to be obscure to the defendant. In any case, in what ought to be a fairly simple matter – the substitution as party of a former trustee by successor trustee per the term of the trust – Ms. Carmen respectfully moves this Honorable Court to recognize her in this proceeding as to what she already is as a matter of law per the Trust, namely, the successor trustee and proper party in interest and thus substitute her as the plaintiff in the captioned matter.

2015ADV211860



1621303

**Exhibit B-2**

PDF

MOTF

2024ADV290042\Judge: RUSSO\ THE ADVERSARIAL CASE OF KATHYRN CARMEN
Electronically Filed: CWF 06/28/2024 14:42:08\CONF#: 160838\WORKFLOW ID: 2464869

Respectfully submitted,

Joel Levin            (0010671)
Aparesh Paul          (0077119)
Mark Mikhaiel         (0091656)
LEVIN & ASSOCIATES CO., L.P.A.
The Tower at Erieview, Suite 1100
1301 East 9th Street
Cleveland, Ohio 44114
(216) 928-0600
(216) 928-0016 (fax)
jl@levinandassociates.com
ap@levinandassociates.com
mm@levinandassociates.com

Attorneys for Amy Carmen, Trustee

2

## SERVICE

A copy of the foregoing has been served on this 19th day of September, 2017 by Electronic Mail upon the following:

Monica A. Sansalone, Esq.
Lori Brown, Esq.
Gallagher Sharp
Sixth Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115
msansalone@gallaghersharp.com
lbrown@gallaghersharp.com

Robert Glickman, Esq.
McCarthy Lebit Crystal & Liffman
1800 Midland Building
101 W. Prospect
Cleveland, OH 44115
rtg@mccarthylebit.com

Andrew S. Goldwasser, Esq.
Ciano & Goldwasser, LLP
101 W. Prospect Ave.
Cleveland, OH 44115
asg@c-g-law.com

Adam Fried, Esq.
Adriann McGee, Esq.
Reminger Co., LPA
1400 Midland Building
101 W. Prospect Ave.
Cleveland, OH 44115
afried@reminger.com
amcgee@reminger.com

_____

Mark Mikhaiel        (0091656)
*One of the Attorneys for Amy Carmen,*
*Trustee*

3



PROBATE COURT
F I L E D
OCT - 6 2017
CUYAHOGA COUNTY, O.

# IN THE COURT OF COMMON PLEAS
# PROBATE DIVISION
# CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| ERIC H. CARMEN, et al. | ) | CASE NO. 2015 ADV 211860 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE ANTHONY J. RUSSO |
| | ) | |
| FRED N. CARMEN | ) | |
| | ) | |
| Defendant. | ) | JUDGMENT ENTRY |

This matter came before the Honorable Judge Anthony J. Russo on a **Motion to Substitute Successor Trustee for Prior Trustee,** filed on September 19, 2017, by Attorney Joel Levin, on behalf of Amy Carmen (hereinafter referred to as "Successor Trustee"), Successor Trustee of the Carmen Family Gift Trust (hereinafter referred to as the "Trust").

This Court finds, upon a review of the file in its entirety, that the Motion is well-taken and should be granted.

Upon due consideration of the Trust terms, relevant facts, and applicable law, this Court finds that, on June 13, 2017, Jonathan Berns, the former Trustee and Intervening Plaintiff, resigned. On that same day, June 13, 2017, Amy Carmen was lawfully appointed by Eric H. Carmen, Plaintiff, as Successor Trustee, in accordance with Section 6 and Section 7 of the Trust.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Motion to Substitute Successor Trustee for Prior Trustee is hereby **GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the resignation by Jonathan Berns, former Trustee, is hereby **APPROVED**.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the appointment of Amy Carmen, as Successor Trustee, is hereby **APPROVED**.



2015ADV211860

1637565

**Exhibit B-3**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Amy Carmen, lawfully appointed Successor Trustee, hereby replaces the former Trustee, Jonathan Berns, in the instant matter.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Clerk of Court shall serve upon all parties notice of this judgment and date of entry pursuant to Civ.R. 58(B).

**IT IS SO ORDERED.**

**JUDGE ANTHONY J. RUSSO**

**IN THE COURT OF COMMON PLEAS**
**PROBATE DIVISION**
**CUYAHOGA COUNTY, OHIO**

| | | |
|---|---|---|
| ERIC H. CARMEN, et al | ) | CASE NO. 2015 ADV 211860 |
| | ) | |
| Plaintiffs, | ) | JUDGE ANTHONY J. RUSSO |
| | ) | |
| v. | ) | |
| | ) | |
| FRED N. CARMEN, | ) | STIPULATED NOTICE OF DISMISSAL |
| | ) | WITH PREJUDICE |
| Defendant. | ) | |

We, the attorneys for the respective parties, do hereby stipulate that any and all claims of

Plaintiffs are dismissed, with prejudice. Each party shall bear their own costs. The Court may

enter an Order accordingly, notice by the clerk being hereby waived.

Respectfully submitted,

*Aparesh Paul / per mail consent*

**Joel Levin          (0010671)**
**Aparesh Paul      (0077119)**
**Mark Mikhaiel    (0091656)**
LEVIN & ASSOCIATES CO., L.P.A.
The Tower at Erieview, Suite 1100
1301 East 9th Street
Cleveland, Ohio 44114
(216) 928-0600
(216) 928-0016 (fax)
jl@levinandassociates.com
ap@levinandassociates.com
mm@levinandassociates.com
*Attorneys for Intervening Plaintiff,*
*Successor Trustee, Amy Carmen and*
*Plaintiff Eric Carmen*

**Monica A. Sansalone (0065143)**
**Lori E. Brown (0071480)**
GALLAGHER SHARP LLP
Sixth Floor - Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 4415
Telephone: (216) 241-5310
Facsimile: (216) 241-1608
msansalone@gallaghersharp.com
lbrown@gallaghersharp.com
*Attorneys for Defendant Fred N. Carmen*

**Exhibit B-4**

2015ADV211860

1730095

PDF          NODSM

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February, 2018, a copy of the foregoing has

been served **electronically** only upon the following:

Adam M. Fried
Adriann S. McGee
**Reminger Co., L.P.A.**
101 W. Prospect Avenue, #1400
Cleveland, OH 44115
Email: AFried@reminger.com
        AMcGee@reminger.com

Andrew S. Goldwasser
**Ciano & Goldwasser, LLP**
1610 Midland Building
101 Prospect Avenue, West
Cleveland, OH 44115-1093
Email: asg@c-g-law.com

Joel Levin
Aparesh Paul
Mark Mikhaiel
**Levin & Associates Co., L.P.A.**
1301 East 9th Street
Cleveland, OH 44114
Email: jl@levinandassociates.com
       ap@levinandassociates.com
       mm@levinandassociates.com
*Attorneys for Intervening Plaintiff,*
*Successor Trustee, Amy Carmen and*
*Plaintiff Eric Carmen*

Jordan Berns
Paul M. Greenberger
**Berns, Ockner & Greenberger, LLC**
3733 Park East Drive, Suite 200
Beachwood, Ohio 44122
Email: jberns@bernsockner.com
       pgreenberger@bernsocker.com

*Attorneys for Jonathan Berns, Individually*

**MONICA A. SANSALONE (0065143)**
**LORI E. BROWN (0071480)**
GALLAGHER SHARP LLP
*Attorneys for Defendant Fred N. Carmen*

2

# RESIGNATION
# OF
# TRUSTEE

I, AMY CARMEN, of Gates Mills, Ohio, acknowledging the Amendment and

Restatement of Trust Agreement, dated August 11, 2017, by and between ERIC H. CARMEN,

of Gates Mills, Ohio, as Grantor, and ████████████████████████████

████████ South Dakota, as Trustee, amending and restating the trust instrument dated July 11,

2007, establishing the Carmen Family Gift Trust (the "Trust"), hereby resign as Co-Trustee of

Trust. ████████████████████████████████████████ South Dakota, will

serve as the sole Trustee of the Trust.

Dated this 11th day of August, 2017.

_____
AMY CARMEN

STATE OF ___OHIO___ )
                   : SS
COUNTY OF ___Cuyahoga___ )

On this, the 11th day of August, 2017, before me, the undersigned officer, personally
appeared AMY CARMEN, known to me or satisfactorily proven to be the person whose name is
subscribed to the within instrument and acknowledged that she executed the same for the
purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public, ___Michael Dent___
My Commission expires: ___Mar 24 2019___

MICHAEL DENT
Notary Public, State of Ohio
My Commission Expires Mar. 24, 2019
Recorded in Lake County
STATE OF OHIO

**Exhibit C**