## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| KATHRYN CARMEN, ET AL. | CASE NO. 1:24-CV-01331 |
| PLAINTIFFS, | JUDGE: DAVID A. RUIZ |
| VS. | |
| AMY CARMEN | MAGISTRATE JUDGE: JENNIFER DOWDELL ARMSTRONG |
| DEFENDANT. | |

## DEFENDANT AMY CARMEN'S ANSWER TO COMPLAINT

Defendant Amy Carmen ("Amy"), by and through her undersigned counsel, for her answer to Plaintiffs' Complaint, hereby states as follows:

1. Amy admits that Kathryn Carmen is an individual residing in Cuyahoga County and denies the balance of the allegations in paragraph one.

2. Amy admits that Clayton Carmen was born and raised in Cuyahoga County, denies for lack of knowledge his current residency, and denies the balance of the allegations in paragraph two.

3. Amy admits the allegations in paragraph three.

4. Amy admits that she served as successor trustee of the Carmen Family Gift Trust ("Gift Trust"), admits that she was residing in Cuyahoga County during her tenure as successor trustee, but denies that she was appointed as such by the Cuyahoga County Probate Court and denies the balance of the allegations in paragraph four.

1

5. Amy denies the allegations in paragraph five.

6. Amy admits that this Court has jurisdiction over the claims brought herein, but denies the balance of the allegations in paragraph six.

7. Amy denies the allegations in paragraph seven.

8. Amy admits that she submitted to the jurisdiction of the Cuyahoga County Probate Court in a previous adversarial action concerning the Gift Trust but denies the balance of the allegations in paragraph eight.

9. Amy admits the allegations in paragraph nine.

10. Amy admits the allegations in paragraph 10.

11. Amy admits the allegations in paragraph 11.

12. Amy admits the allegations in paragraph 12.

13. Amy denies the allegations in paragraph 13; further answering, Amy states that Eric Carmen ("Eric") together with his brother and then-trustee, Fred Carmen, *and not Plaintiff*, created the Gift Trust on or about July 11, 2007.

14. Amy admits that the Gift Trust was originally governed by the "Trust Agreement for the Carmen Family Gift Trust," and that Exhibit A to the Complaint is a copy of the Gift Trust as of 2007, which speaks for itself. Amy denies that the Gift Trust is currently governed by said document and denies the balance of the allegations in paragraph 14.

15. Amy denies the allegations in paragraph 15.

16. Amy admits that Eric transferred his music catalog to the Gift Trust in 2007 and denies the balance of the allegations in paragraph 16.

17. Amy denies the allegations in paragraph 17, specifically denying that at the time of its creation the Gift Trust contained "all or a vast majority" of Eric's assets.

18. Amy admits the allegations in paragraph 18.

19. Amy denies the allegations in paragraph 19; further answering Amy states that the Gift Trust speaks for itself and specifically does not contain a material purpose clause.

20. Amy denies the allegations in paragraph 20 and further answering state that Plaintiffs failed to attach the documents referenced in paragraph 20, so they are outside the record.

21. Amy admits that Eric was the sole beneficiary of the Gift Trust during his lifetime, which includes all times relevant to Plaintiffs' Complaint. Amy admits the allegations in paragraph 21.

22. Amy admits that Eric was a permissible distributee of income under the Gift Trust; further answering, Amy states that the Gift Trust speaks for itself and denies the balance of the allegations in paragraph 22.

23. Amy admits that Plaintiffs were, at one time, beneficiaries under the Gift Trust as "beneficiaries" is defined under Ohio law, but denies that they were *ever* current beneficiaries of the Gift Trust, denies that they are beneficiaries of the Gift Trust in its current iteration, and denies the balance of the allegations in paragraph 23.

24. Amy denies the allegations in paragraph 24.

25. Amy admits the allegations in paragraph 25.

26. Amy admits the allegations in paragraph 26.

27. Amy admits that the Plaintiffs' behavior towards Eric and the actions of Eric's ex-wife, Susan Wirtenberg ("Susan") affected the father-child relationship between Plaintiffs and Eric. Amy denies the balance of the allegations in paragraph 27.

28. Amy admits the allegations in paragraph 28.

29. In answering paragraph 29, Amy admits that she and Eric were married but states that the correct date is October 8, 2016. Amy admits the other allegations in paragraph 29 and affirmatively answers that she and Eric maintained a loving relationship and happy marriage until Eric's death.

30. Amy denies the allegations in paragraph 30. Further answering, Amy states that the Plaintiffs' themselves, sometimes with the aid and encouragement of their mother, Susan, directly contributed to the deterioration of their relationship with Eric through litigation, damage to property, death threats, and malfeasance at their respective universities as described herein.

31. Amy denies the allegations in paragraph 31. Further answering, it was Plaintiffs' behavior, motivated by what Eric called "malignant entitlement" which created the barrier between Eric and his children.

32. Amy denies the allegations in paragraph 32.

33. Amy denies the allegations in paragraph 33.

34. Amy denies the allegations in paragraph 34.

35. Amy denies the allegations in paragraph 35.

36. Amy denies the allegations in paragraph 36. Further answering, it was Plaintiffs' action that isolated them from their father – many actions beginning as far back as 2012, before Eric married Amy. The following are some of Plaintiffs' actions that Eric stated estranged him from Plaintiffs:

   a. Kathryn made a clear death threat against her father in 2016, indicating that her and Clayton had discussed his murder. The day after Eric found the threat, he located his Jaguar key fob, which had been missing for a month, in Kathryn's school backpack, substantiating her threats. (see *Exhibit 1* diary entry, attached hereto and incorporated herein):

   > Amy & Eric are attentive. Too attentive. I can't stop dwelling on how much I hate them. Clay & I have discussed killing Eric then driving his Jag to California. Our plan sounds better & better. *** Amy is going to take care of her mother soon…It may be time to strike.

   b. Clayton demanded through litigation that Eric continue to pay his living expenses and tuition, even during the time he was suspended from The Ohio State University for academic misconduct. (See **Exhibit 2**, texts Clayton sent to a math tutor requesting that the tutor take a calculus test for him, attached hereto and incorporated herein.)

   c. Kathryn was banned from living in the dormitories at Cleveland State University due to a no-contact order against her by another resident.

She was placed on academic probation for failing grades. Despite this, she demanded Eric pay her tuition and living expenses

d. Kathryn and Clayton broke into Eric's home multiple times, including on New Year's Eve December 31, 2014 throwing a party of 200 people and causing damage to the property while Eric was out of town.

e. Clayton used Eric's credit cards repeatedly without authorization beginning in or around 2015 amounting to thousands of dollars in charges.

f. Kathryn vandalized Eric's Wikipedia page, requiring Eric to retain counsel and issue a cease-and-desist letter.

g. Kathryn and Clayton repeatedly called their father derogatory names over many years and routinely mocked and tormented him online, on social media, and in person.

h. Kathryn consumed alcohol underage and kept both alcohol and illegal substances hidden in Eric's home, which Eric first discovered in 2016.

37. Amy denies the allegations in paragraph 37. Further answering, Amy states that although she was under no obligation to do so, she provided Kathryn and Clayton each with a heart-shaped urn containing some of Eric's ashes and a leather bracelet with his fingerprint embossed on the clasp. She also provided Kathryn with a ring containing Eric's fingerprint and some of his ashes and provided Clayton with a set of cufflinks containing Eric's fingerprint and initials. Further answering, Amy states that she did not include Kathryn and

Clayton in the private memorial service held for Eric because a) that was Eric's wish; and b) both Kathryn and Clayton made social media posts disparaging their father shortly after his death, including Clayton calling him a "terrible father" in a social media post.

38. Amy admits the allegations in paragraph 38.

39. Amy admits that Fred Carmen resigned as trustee of the Gift Trust only after being forced to do so by Cuyahoga County Probate Judge Anthony J. Russo. Amy further admits that Sheldon Berns was appointed to the role of successor trustee, but denies the balance of the allegations in paragraph 39, in part because the referenced order dated December 29, 2015 would speak for itself and was not attached nor incorporated into the Complaint.

40. Amy admits the allegations in paragraph 40.

41. Amy admits that Jonathan Burns became the successor trustee of the Gift Trust in or about June 2016, but denies the balance of the allegations in paragraph 41, in part because the referenced motion would speak for itself and is not attached nor incorporated into the Complaint.

42. Amy admits the allegations in paragraph 42.

43. Amy admits that the prior adversarial action resulted in a settlement and denies the balance of the allegations in paragraph 43 for lack of information.

44. Amy denies the allegations in paragraph 44.

45. Amy admits that she was substituted in the Adversarial Action as a trustee of the Gift Trust and further states that Exhibit B-1 of the Complaint speaks for itself.

46. Amy admits that she replaced Jonathan Berns as successor trustee of the Gift Trust and further states that the documentation in Exhibit B-1 of the Complaint speaks for itself.

47. Amy admits the allegations in paragraph 47 and further states that Exhibit B-2 speaks for itself. Further answering, Amy states this motion to substitute parties is not equivalent to the Cuyahoga County Probate Court *"appointing"* her as successor trustee of the Gift Trust.

48. In answering paragraph 48, Amy states that the order dated October 6, 2017 and attached to the Complaint as Exhibit B-3 speaks for itself and further answering states that such order merely grants her motion to substitute and does not appoint her successor trustee of the Gift Trust.

49. Amy denies the allegations in paragraph 49, in part because paragraph 49 only vaguely refers to filings without attaching the same. Further answering, Amy states that at the time period referenced, she was serving as special trustee of the Gift Trust, with all authority necessary to receive assets on behalf of the Gift Trust and deposit the same in any Gift Trust account. *See* ***Exhibit 3***, attached hereto and incorporated herein.

50. Amy admits the allegations in paragraph 50 and, further answering, states that Exhibit B-4 to the Complaint speaks for itself.

51. Amy denies for lack of knowledge the allegations about when the Plaintiffs' became aware of the Gift Trust and denies the balance of the allegations in paragraph 51.

52. Amy admits the allegations in paragraph 52 in so far as she is aware of Plaintiffs' contacting her through counsel regarding the Gift Trust. Further answering, Amy states that she contacted Plaintiffs proactively regarding Eric's death. Amy denies the balance of the allegations in paragraph 52 for lack of knowledge.

53. Amy denies the allegations in paragraph 53 for lack of knowledge.

54. Amy denies the allegations in paragraph 54 for lack of knowledge.

55. Amy admits that Plaintiffs contacted her regarding the Gift Trust and denies the balance of the allegations in paragraph 55.

56. Amy denies the allegations in paragraph 56.

57. Amy admits that Plaintiffs, through counsel, contacted her requesting a reporting of the Gift Trust and further answering states that such correspondence would speak for itself, but was not attached to the Complaint.

58. In answering paragraph 58, Amy attaches hereto and incorporates herein *Exhibit 4,* letter from her counsel to Plaintiffs' counsel and admits any allegations consistent with said correspondence but denies the balance of the allegations in paragraph 58.

59. Amy admits Plaintiffs sent additional correspondence and such correspondence would speak for itself, but it was not attached to the Complaint. Amy denies the balance of the allegations in paragraph 59.

60. In answering paragraph 60, Amy states that the referenced correspondence would speak for itself, but it was not attached to the Complaint. In further answering, Amy admits that Plaintiffs requested an accounting of the Gift Trust, but denies that they are entitled to the same and denies the balance of the allegations in paragraph 60.

61. In answering paragraph 61, Amy states that the correspondence from her counsel dated May 30, 2024 speaks for itself and attaches hereto and incorporates herein ***Exhibit 5,*** a copy of said correspondence without appendices A and B. Amy admits the allegations consistent with that correspondence and denies the balance of the allegations in paragraph 61.

62. The correspondence dated May 30, 2024, attached hereto as ***Ex. 5***, speaks for itself. In answering further, Amy admits that she was successor trustee only from June 13, 2017 until August 11, 2017 and that she was Special Trustee beginning on August 11, 2017. (See, **Ex. 3**). Amy denies the balance of the allegations in paragraph 62.

63. Amy admits that the Gift Trust changed situs and governing law to South Dakota, but denies the characterization of such transfer as "improper" and denies the balance of the allegations in paragraph 63. In answering further,

Amy states that the transfer of situs and governing law to South Dakota was consistent with Eric's intent, which he strongly expressed.

64. Amy admits that the situs and governing law of the Gift Trust was transferred to South Dakota, but denies the characterization of it as "improper" and denies that Plaintiffs were entitled to any notice of the same and denies the balance of the allegations in paragraph 64.

65. Amy denies the allegations in paragraph 65 and further answering states that the transfer of the situs and governing law to South Dakota was consistent with Eric's intent, which he strongly expressed.

66. Amy denies the allegations in paragraph 66.

67. Amy denies the allegations in paragraph 67, specifically denying that the Ohio Trust Code is the applicable law once the Gift Trust was moved to South Dakota.

68. Amy denies that the Gift Trust contained a "material purpose clause," in 2007 and denies the balance of the allegations in paragraph 68.

69. Amy admits that the Cuyahoga County Probate Court was not involved in the change of situs or governing law to South Dakota. Amy denies that such transfer was "improper" and denies that any court was required to "approve" the transfer and denies the balance of the allegations in paragraph 69.

70. Amy admits the Plaintiffs were not notified of the transfer of the situs from Ohio to South Dakota. Amy further denies that Plaintiffs were within the class of "current beneficiaries" entitled to notice of a change of place of

administration under Ohio's Trust Code. *See* R.C. 5801.07(D) and 5801.01(F). Amy denies the balance of the allegations in paragraph 70.

71. Amy denies that the Plaintiffs were required to "consent" to a transfer of the place of administration, denies the characterization of the transfer as "improper," admits that the Plaintiffs did not consent to the transfer, and denies the balance of the allegations in paragraph 71.

72. Amy denies for lack of knowledge the allegations in paragraph 72.

73. Amy denies the allegations in paragraph 73, specifically denying that she was involved in the modification of the Gift Trust and affirmatively stating that any such modification was consistent with Eric's intent, which he strongly expressed.

74. Amy admits Plaintiffs are not beneficiaries of the Gift Trust as of August 11, 2017, admits that any modifications were consistent with South Dakota law and Eric's strongly-expressed intent, and denies the balance of the allegations in paragraph 74.

75. Amy admits that Plaintiffs were not notified of the modifications to the Gift Trust and denies they were entitled to any such notice and denies the balance of the allegations in paragraph 75.

76. Amy denies the allegations in paragraph 76.

77. Amy denies the allegations in paragraph 77.

78. Amy denies the allegations in paragraph 78, and specifically denies that the 2007 version of the Gift Trust contained a material purpose clause

79. Amy admits that no court approved the modification of the Gift Trust, but denies that any such approval was required and denies the balance of the allegations in paragraph 79.

80. Amy admits that the Plaintiffs were not notified about the modification of the Gift Trust, denies that Plaintiffs were entitled to any notice of the modification of the Gift Trust and denies the balance of the allegations in paragraph 80.

81. Amy admits that Plaintiffs did not consent to the modification of the Gift Trust, denies that Plaintiffs' consent was required, and denies the balance of the allegations in paragraph 81.

82. Amy denies for lack of knowledge the allegations in paragraph 82.

83. Amy denies the allegations in paragraph 83.

84. Amy admits that she resigned as a cotrustee of the Gift Trust on or about August 11, 2017 and denies the balance of the allegations in paragraph 84.

85. Amy admits that Exhibit C of the Complaint documents her resignation as cotrustee of the Gift Trust, states that such document speaks for itself, and denies the balance of the allegations in paragraph 85.

86. In answering paragraph 86, Amy states that the resignation, attached to the Complaint as Exhibit C, speaks for itself. Further answering, Amy states that the sole trustee of the Gift Trust is a resident of and/or has a place of business in South Dakota. Amy denies the balance of the allegations in paragraph 86.

87. In answering paragraph 87, Amy states that the resignation, attached to the Complaint as Exhibit C, speaks for itself. Further answering, Amy states that as of August 11, 2017, Eric and she were residents of Cuyahoga County, Ohio and Amy denies the balance of the allegations in paragraph 87.

88. Amy admits the allegations of paragraph 88 and further states that the resignation, attached to the Complaint as Exhibit C, speaks for itself.

89. Amy denies the allegations of paragraph 89.

90. In answering paragraph 90, Amy states that the resignation, attached to the Complaint as Exhibit C, speaks for itself. Further answering, Amy states that the Gift Trust was modified on or about August 11, 2017 and Amy denies the balance of the allegations in paragraph 90.

91. Amy admits that no court approved the modification of the Gift Trust in 2017, but denies that any such approval was required and denies the balance of the allegations in paragraph 91.

92. Amy admits that the Plaintiffs were not notified of the modification of the Gift Trust, but denies that they were entitled to such notice and denies the balance of the allegations in paragraph 92.

93. Amy admits that the Plaintiffs did not consent to the modification of the Gift Trust, but denies that their consent was required and denies the balance of the allegations in paragraph 93.

94. Amy denies the allegations in paragraph 94 and further answering states that Plaintiffs are not entitled to information about the Gift Trust.

95. Amy denies for lack of knowledge the allegations in paragraph 95.

96. Amy denies for lack of knowledge the allegations in paragraph 96.

97. Amy admits the allegations in paragraph 97.

98. Amy denies the allegations in paragraph 98. Answering further, Amy denies the characterization of the change of situs and governing law as "improper" and the modification as "invalid." Amy further states that she did not cause the modification of the Gift Trust and that the modification is consistent with Eric's strongly-expressed intent.

99. Amy denies the allegations in paragraph 99.

100.    Amy denies the allegations in paragraph 100.

101.    In answering paragraph 101, Amy states that the filed documents and court's docket would speak for themselves, but they were not attached to the Complaint. Further answering, Amy was special trustee of the Gift Trust during the time period referenced in paragraph 101 and as set forth in **Ex. 3**.

102.    Amy denies the allegations in paragraph 102. Further answering, Amy states that in the time period referenced in paragraph 102, she was serving as special trustee as set forth on **Ex. 3**.

103.    Amy denies the allegations in paragraph 103 and further answering states that she was acting within her authority.

104.    Amy denies the allegations in paragraph 104.

105.    Amy admits she provided Plaintiffs with the account statement and list of expenses referenced in paragraph 105. Amy denies that she was or is

obligated to provide Plaintiffs any information about the Gift Trust and denies the balance of the obligations in paragraph 105.

106.  Amy denies the allegations in paragraph 106.

107.  Amy denies the allegations in paragraph 107.

108.  Amy denies the allegations in paragraph 108. Further answering, Amy states that the 2007 version of the Gift Trust did not contain a material purpose clause and that the modification of the Gift Trust was done in accordance with Eric's strongly-expressed intent.

109.  Amy denies the allegations in paragraph 109.

110.  Amy reincorporates her prior denials and admissions as if fully restated herein.

111.  In answering paragraph 111, Amy admits that she had fiduciary duties in accordance with the Ohio Trust Code prior to the change of situs, governing law, and place of administration. Amy denies that Plaintiffs were current beneficiaries under Ohio law as of 2017 and states that therefore, Plaintiffs were not entitled to notice of the change of situs. Amy denies the balance of the allegations in paragraph 111.

112.  Amy denies the allegations in paragraph 112 and further states that the Ohio Trust Code was not applicable to the Gift Trust after the change of situs, governing law, and place of administration.

113.  Amy denies the allegations in paragraph 113.

114.  Amy denies the allegations in paragraph 114.

115.     Amy denies that Plaintiffs are entitled to the relief sought in paragraph 115, including subparagraphs (a) – (g), and denies any allegations therein.

116.     Amy reincorporates her prior admissions and denials as if fully rewritten herein.

117.     In answering paragraph 117, Amy admits that she had fiduciary duties in accordance with the Ohio Trust Code prior to the change of situs, governing law, and place of administration. Amy denies that Plaintiffs were current beneficiaries under Ohio law as of 2017 and states that therefore, Plaintiffs were not entitled to notice of the change of situs. Amy denies the balance of the allegations in paragraph 117.

118.     Amy denies the allegations in paragraph 118.

119.     Amy denies the allegations in paragraph 119.

120.     Amy denies the allegations in paragraph 120.

121.     Amy denies that Plaintiffs are entitled to the relief sought in paragraph 121, including subparagraphs (a) – (g), and denies any allegations contained therein.

122.     Amy reincorporates her prior admissions and denials as though they were fully written herein.

123.     In answering paragraph 123, Amy admits that during her time as successor trustee, the Gift Trust had multiple beneficiaries, but further answering states that it had only one "current beneficiary" as defined in the

Ohio Trust Code and therefore only one person to notify of a change in situs of place of administration. Amy denies the balance of the allegations in paragraph 123.

124.     In answering paragraph 124, Amy admits that she had fiduciary duties in accordance with the Ohio Trust Code prior to the change of situs, governing law, and place of administration. Amy denies that Plaintiffs were current beneficiaries under Ohio law as of 2017 and states that therefore, Plaintiffs were not entitled to notice of the change of situs. Amy denies the balance of the allegations in paragraph 124.

125.     Amy denies the allegations in paragraph 125.

126.     Amy denies the allegations in paragraph 126.

127.     Amy denies that Plaintiffs are entitled to the relief sought under paragraph 127, including subparagraphs (a) – (g), and denies any allegations contained therein.

128.     Amy reincorporates the prior admissions and denials as if fully rewritten herein.

129.     In answering paragraph 129, Amy admits that she had fiduciary duties in accordance with the Ohio Trust Code prior to the change of situs, governing law, and place of administration. Amy denies that Plaintiffs were current beneficiaries under Ohio law as of 2017 and states that therefore, Plaintiffs were not entitled to notice of the change of situs. Amy denies the balance of the allegations in paragraph 129.

130.     Amy denies the allegations in paragraph 130.

131.     Amy denies the allegations in paragraph 131.

132.     Amy denies that Plaintiffs are entitled to the relief sought in paragraph 131, including subparagraphs (a) – (g), and denies any allegations contained therein.

133.     Amy reincorporates her prior admissions and denials as if fully rewritten herein.

134.     In answering paragraph 134, Amy admits that she had fiduciary duties in accordance with Ohio common law prior to the change of situs, governing law, and place of administration. Amy denies that Plaintiffs were current beneficiaries under Ohio law as of 2017 and states that therefore, Plaintiffs were not entitled to notice of the change of situs. Amy denies the balance of the allegations in paragraph 134.

135.     Amy denies the allegations in paragraph 135.

136.     Amy denies the allegations in paragraph 136.

137.     Amy reincorporates the prior admissions and denials as if fully rewritten herein.

138.     Amy denies the allegations in paragraph 138, in part because Amy was under no obligation to provide Plaintiffs with information about the Gift Trust.

139.     Amy denies the allegations in paragraph 139.

140.     Amy denies the allegations in paragraph 140.

141.     Amy denies the allegations in paragraph 141.

142.     Amy denies the allegations in paragraph 142.

143.     Amy denies the allegations in paragraph 143.

144.     Amy reincorporates the prior admissions and denials as if fully rewritten herein.

145.     Amy denies the allegations in paragraph 145.

146.     Amy denies the allegations in paragraph 146. Further answering, Plaintiffs have not exhausted their other remedies and therefore this claim for intentional interference of expected inheritance is premature and unripe.

147.     Amy denies the allegations in paragraph 147.

148.     Amy denies the allegations in paragraph 148.

149.     Amy denies the allegations in paragraph 149. Answering further, Amy states that Plaintiffs' actions – not hers – were the cause of any damages; these actions include those in ¶ 36, above, such as the following:

    a.  Clayton's being suspended from The Ohio State University for academic misconduct, i.e., attempting to persuade a math tutor to take a test for him (See **Ex 2,** Clayton's texts to the math tutor);

    b.  Kathryn's death threat as set forth on **Ex. 1** which indicates she and Clayton discussed Eric's murder, which was further substantiated when Eric found his missing Jaguar key fob in Kathryn's backpack;

    c.  Kathryn and Clayton suing Eric and demanding additional tuition and living expenses despite both being suspended and/or on probation at

their respective colleges and Kathryn being banned from living in the dormitories due to a no-contact order against her by another resident;

d.  Kathryn defaming Eric by repeatedly changing his Wikipedia page;

e.  Plaintiffs breaking into Eric's home while he was out of town and throwing a party of over 200 people, which caused damages to the property; and,

f.  Plaintiffs generally mocking, mistreating, and tormenting Eric for many years, including writing disparaging remarks on social media about Eric immediately following his death.

g.  Plaintiffs' attitude, as Eric described it, of "malignant entitlement" to his money and treating him as thought that was all he was good for.

150.    Amy denies the allegations in paragraph 150.

## AFFIRMATIVE DEFENSES

151.    Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

152.    Plaintiffs' damages, if any, were caused in whole or in part by negligence, consent, affirmative actions, and/or assumption of the risk of Plaintiffs. Specifically, this includes and is not limited to Plaintiffs' actions as set forth in paragraph 149 of the Answer.

153.    Plaintiffs' claims, at least in part, are barred as being unripe and premature.

154.     Plaintiffs' claims are barred because Plaintiffs entered a settlement agreement on or about March 25, 2020 which waived any and all claims, known or unknown, that Plaintiffs had or could have had against Amy and Eric including their successors, assigns, agents, representatives, and entities in which the Eric and/or Amy own or have a legal beneficiary interest.[1] Eric had a beneficial interest in the Gift Trust and therefore Plaintiffs have waived all claims against Amy, Eric, and/or the Gift Trust.

155.     Plaintiffs' damages, if any, that they allege were proximately caused by intervening and superseding events and/or persons over whom Amy had no control or duty to control.

156.     Plaintiffs have failed to name necessary parties pursuant to FRCP 19.

157.     Plaintiffs are not the proper parties in interest. Specifically, Plaintiffs are not beneficiaries of the Gift Trust and therefore have no standing to challenge its administration.

158.     Plaintiffs' claims are barred in whole or in part by one or more of the following doctrines: laches, waiver, consent, estoppel, acquiescence, unclean hands, accord and satisfaction, and/or ratification.

159.     Plaintiffs have failed to mitigate their alleged damages.

160.     Plaintiffs' claims are barred, at least in part, by setoff to which Amy is entitled.

---

[1] The settlement agreement is confidential and the case records for the related litigation is sealed. Undersigned counsel will make the agreement available to opposing counsel and the Court under a protective order and/or filed as a sealed document and/or subject to the consent of the parties to the agreement.

161.     Plaintiffs' Complaint fails for having been brought after the statute of limitations.

162.     Amy asserts her entitlement to any statutory and/or common law immunities not specifically addressed in this Answer.

163.     Amy reserves the right to supplement additional affirmative defenses, as they become known.

WHEREFORE, Amy moves this Court to dismiss the Complaint in its entirety and award her fees, costs, reasonable attorneys' fees, and all other relief this Court deems just and equitable.

Date:  August 30, 2024

Respectfully submitted,

*/s/ Jessica S. Forrest*
*/s/ Timothy J. Gallagher*
Jessica S. Forrest (0087602)
Timothy J. Gallagher (0086764)
REMINGER CO., LPA
200 Public Sq., Ste. 1200
Cleveland OH 44114
(216) 430-2162; Fax: (216) 687-1841
jforrest@reminger.com
tgallagher@reminger.com
**Attorneys for Defendant**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing *Answer to Complaint* was served via e-mail upon Plaintiffs' counsel on this 30th day of August, 2024 at:

Richard N. Selby, II, Esq.
Joseph N. Cindric, Esq.
**Dworken & Bernstein, Co. LPA**
60 South Park Place
Painesville, OH 44077
rselby@dworkenlaw.com
jcindric@dworkenlaw.com
*Attorneys for Plaintiffs*

*/s/ Timothy J. Gallagher*
Timothy J. Gallagher (OH Bar# 0086764)
*One of the Attorneys for Defendant*