2.12.16

Time: 12:04 am
Music: Let it happen - Tame Impala
Temp: 10°F
Weight: 100.7 lbs.
Movie: None
D.O.W: Friday

Dear Diary,
I need my phone. Amy & Eric are attentive. Too attentive. I can't stop dwelling on how much I hate them. Clay & I have discussed killing Eric then driving his Jag to California. ⬛ Our plan sounds better & better. They started taking my computer from me at night again. I'm forced to take one from school. I found out I'm now done with S.U.R. I got so angry tonight I couldn't stop shaking. I can't be responsible for my own actions at this point. I suspect they might be on to me by now. They've been searching my bedroom since I tested positive for drugs. They told me I have no privacy after that. I have to control my anger somehow. I think about going back to my Mom's but I don't know if that's an option. I miss Jackson sometimes. Amy is going to take ⬛ care of her mother soon. She's having knee surgery. It may be time to strike. We'll see how things go.

xoxo

**Exhibit 1**

12:23

**Maybe: Clayton**

Siri found new contact info
Clayton + ▮▮▮-2560 add...

Hey Jack, my name's Clayton, I'm a junior at OSU looking for some calc help (got your info off the MSLC private tutor page), are you interested at all?

> I'm sorry! I'm booked this semester!

all good

kinda looking more for situational help than a regular thing I don't know if that's more of a possibility

> Potentially. i'd just need to be notified a week or two in advance to when you'd like to meet. I have people trying to schedule day of appointments and it just doesn't work haha.

So I'm currently taking calc 1131 online through a different

---

11:03

**Maybe: Clayton**

Siri found new contact info
▮▮▮-2560 add...

> notified a week or two in advance to when you'd like to meet. I have people trying to schedule day of appointments and it just doesn't work haha.

So I'm currently taking calc 1131 online through a different institution, I'm not really looking for tutoring so much as I'm looking for someone to take a couple online tests for me. If that's something you're not interested in, all good, but I'd pay twice as much as your regular hourly rate.

I can give 3+ weeks notice if you're interested

> Sorry I cannot do that for you.
> Read Thursday

No worries, thanks for the response!

# Exhibit 2

APPOINTMENT
OF
SPECIAL TRUSTEE

This APPOINTMENT OF SPECIAL TRUSTEE is made this 11th day of August, 2017, by ERIC H. CARMEN, as Grantor of the ▌▌▌▌▌▌▌▌▌▌ Trust.

WITNESSETH:

WHEREAS, the ▌▌▌▌▌▌▌▌▌▌ Trust (the "Trust") was established pursuant to trust agreement made by and between Eric H. Carmen ("Eric"), as Grantor, and Fred N. Carmen, as Trustee, on July 11, 2007, which was amended and restated by written instrument on August 11, 2017 (the "Trust Agreement"); and

WHEREAS, ▌▌▌▌▌▌▌▌▌▌ is the sole trustee of the Trust; and

WHEREAS, Section 9.4 of the Trust Agreement allows Eric, as Grantor of the Trust, to appoint a Special Trustee;

WHEREAS, pursuant to Section 9.2 of the Trust Agreement the Special Trustee shall have all the powers assigned to it by the party making the appointment; and

WHEREAS, Eric wishes to appoint Amy Carmen as Special Trustee of the Trust with all powers as set forth herein.

NOW, THEREFORE, Eric hereby appoints Amy Carmen as Special Trustee of the Trust subject to the following:

1. Amy Carmen's term as Special Trustee of the Trust shall last until terminated by the Trust Protector pursuant to written instrument delivered to Amy Carmen and filed with the Trust records or until Amy Carmen resigns as Special Trustee.

**Exhibit 3**

2. As Special Trustee, Amy Carmen's powers shall be limited to any and all powers and authority necessary to receive assets on behalf of the Trust for the purpose of delivering or depositing such assets to any trust account as determined appropriate and proper in the sole discretion of the Special Trustee.

3. This appointment of Special Trustee shall be effective as of the date first listed above.

Eric H. Carmen, Grantor of the ▮▮▮ Trust

STATE OF OHIO )
 : SS
COUNTY OF Cuyahoga )

On this, the 11th day of August, 2017, before me, the undersigned officer, personally appeared Eric H. Carmen, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

Notary Public, Michael Dent
My Commission expires: Mar 24 - 2019

MICHAEL DENT
Notary Public, State of Ohio
My Commission Expires Mar. 24, 2019
Recorded in Lake County

2

# KELLER ROHRBACK L.L.P.

LAURIE B. ASHTON AZ, CO**
ROBERT M. BARTELS AZ
KENNETH A. BLOCH WA**
RACHEL C. BOWANKO CA, WA
KAREN E. BOXX WA**
GRETCHEN FREEMAN CAPPIO MI, WA
ALISON CHASE AZ, CA
FELICIA J. CRAICK WA
ROB J. CRICHTON WA
ADELE DANIEL WA
JULI FARRIS CA, WA
ERIC J. FIERRO AZ
STEPHANIE A. FIERRO AZ, WA
MIREN FIRST WA
KYLIE N. FISHER WA
WILLIAM L. FLEMING WA
ALISON S. GAFFNEY WA

LAURA R. GERBER WA
MATTHEW M. GEREND WA
GARY A. GOTTO AZ, MT
BENJAMIN GOULD CA, WA
CHRISTOPHER GRAVER AZ
ZACHARY W. GUSSIN WA
IRENE M. HECHT WA**
GARRETT HEILMAN IL, WA
SCOTT C. HENDERSON WA
DEAN N. KAWAMOTO CA, DC, WA
RON KILGARD AZ, DC, NY
KATHERINE J. KLEIN CO
DAVID J. KO WA
ERIC R. LALIBERTE WA
BENJAMIN J. LANTZ WA
CARI CAMPEN LAUFENBERG WA
JEFFREY LEWIS CA

ANDREW N. LINDSAY WA
DEREK W. LOESER NY, WA
ERIC G. LOMBARDO WA
HOLLY E. LYNCH WA
KATHRYN MCCALLUM WA
RYAN MCDEVITT MI, WA
ERIC N. MATTESON AZ, CO
MATTHEW S. MELAMED CA
DANIEL MENSHER OR, WA
KEIL M. MUELLER NY, OR
NATHAN L. NANFELT WA
SARAH R. OSBORN OR, WA
YOONA PARK OR
MATTHEW J. PREUSCH CA, OR
SYDNEY READ CA, CO, WA, WY
ERIN M. RILEY WA, WI
ADAM L. ROSENBERG AZ WA

JOSHUA L. ROSS OR, WA
STEVEN N. ROSS WA**
CHRIS RYDER WA
MARK D. SAMSON AZ, DC
LYNN LINCOLN SARKO AZ, DC, WA, WI
CHRISTOPHER L. SPRINGER CA
NATIDA SRIBHIBHADH WA
THOMAS A. STERKEN WA
BETH M. STROSKY WA
PAUL A. TONELLA WA
HAVILA C. UNREIN CA, MT, WA**
JENNIFER S. WAGNER OR
MICHAEL WOERNER WA
JEREMY P. YATES WA

** OF COUNSEL

April 29, 2024

**VIA E-MAIL AND U.S. MAIL**

Joseph Cindric
Dworkin & Bernstein
60 South Park Pl.
Painesville, Ohio 44077

Re:  The Carmen Family Gift Trust - Response

Dear Mr. Cindric:

Our office represents Amy Carmen, something your clients knew already. Please kindly direct future correspondence to us rather than to her directly. In any event, we're in receipt of your letter—and it seems you may not be aware of the relevant history. Walk with me.

Your clients are certainly "beneficiaries"—not of any existing trust—but of their father's extraordinary talent. Clayton and Kathryn wanted for nothing, had all manner of doors opened for them, and otherwise benefitted from the various other perks attendant to Eric Carmen's international fame. But as has been frequently noted, access to fame and fortune often only serves to make a person more of what they already are.

As here, trouble was brewing for some time. However, it became acute about a decade ago, when your clients began selling drugs out of Eric's home while he was sleeping. Setting aside the illegality (and clichéd nature of affluent children drug-dealing out of dad's basement), this put Eric in obvious physical danger. He had to re-key the home several times, and even overhaul the alarm system—while your clients continued to break in. This turned into stealing and selling Eric's possessions on Ebay; followed by a drunken New Years Eve rager in 2015 without Eric's consent. When the cover-up was blown, your clients—along with their biological mother—turned on each other. The conversation, overheard by Eric, reflected an overall sentiment that Eric was not part of "their family" and should not have been told about the party.

The downward spiral continued when housekeepers found Kathryn's journal in 2016. She was, along with Clayton, planning Eric's murder:

Exhibit 4

Joseph Cindric  **KELLER ROHRBACK L.L.P.**
April 29, 2024
Page 2

> Dear Dizry,
> I need my phone. Amy & Eric are attentive. Too attentive. I can't stop dwelling on how much I hate them. Clay & I have discussed killing Eric then driving his Jag to California. Our plan scums better & better. They started taking my computer from me at night too. I'm forced to take one from school. I found out I'm now done with S.O.R. I got so angry tonight I couldn't stop shaking. I can't be responsible for my own actions at this point. I suspect they might be on to me by now. They've been searching my bedroom since I tested positive for drugs. They told me I have no privacy after that. I have to control my anger somehow. I think about going back to my Mom's but I don't know if that's an option. I miss Jackson sometimes. Amy is going to take care of her mother soon. She's having knee surgery. It may be time to strike. We'll see how things go.
> XOXO

This needs no elaboration—other than to note that Kathryn was, in fact, found with the keys to Eric's "Jag."

Time went on, and the estrangement continued. At one point, while at Cleveland State University, Kathryn rewrote Eric's Wikipedia page to malign him. It wasn't hard to solve the mystery, being that Kathryn used the school's own internet service to carry out the defamation. A formal cease-and-desist letter followed. Around this same time, Clayton was being suspended from OSU for a would-be cheating scandal, where he was attempting to bribe tutors to take tests for him.

> So I'm currently taking calc 1131 online through a different institution, I'm not really looking for tutoring so much as I'm looking for someone to take a couple online tests for me. If that's something you're not interested in, all good, but I'd pay twice as much as your regular hourly rate.
>
> I can give 3+ weeks notice if you're interested

By this time, Eric genuinely feared his children, and his attempts to smooth things over were met with laughter and disrespect. So he left Ohio with Amy, and they focused on their privacy and personal safety in Arizona. Contemporaneous communications with local law enforcement confirm as much. Clayton and Kathryn, in contrast, spent their time sounding off on social media about how much they hated their dad:

Joseph Cindric  **KELLER ROHRBACK L.L.P.**
April 29, 2024
Page 3



This kind of online clout-chasing, at Eric's expense, continued even after his death:



Most people, at this point, would simply move on with some semblance of gratitude for their privileged upbringing. But your clients did not. They, instead, along with their mother, went the litigation route—not because Eric did anything wrong, but because it would hurt and embarrass him (Eric, again, was notoriously private). The gist was that they were entitled to indefinite sponsorship "during college," regardless of how disengaged in their actual education they were. Following negotiations, Eric and Amy bought their peace at great cost. The parties then agreed to go their separate ways.

By this point, communication was almost nonexistent. Apart from pecking out some emails—because it made Eric physically ill to speak with your clients—the parties have not had a relationship in years.

It is against this backdrop that we now respond directly to your letter. Amy is not a trustee; and the Carmen Family Gift Trust was discontinued in 2017. This should come as no shock to your clients—who spent the last decade of Eric's life disowning him, defaming him, and suing him. Eric had no interest in providing anything further to Clayton or Kathryn following his death, and in fact, undertook significant efforts—with the aid of sophisticated

Joseph Cindric  
April 29, 2024  
Page 4

**KELLER ROHRBACK L.L.P.**

counsel—to ensure his wishes would be honored.  Stated more directly, your clients have no interest, right, or entitlement to any of Eric's property or assets.

Nor do we have any obligation to furnish further information to you or your clients.  Whatever goodwill Clayton and Kathryn enjoyed with our client was promptly torched.  The day before Eric's memorial, Clayton sent Amy a text expressing happiness that she never had biological children.  This was particularly venomous, given Clayton's awareness that cancer treatment robbed Amy of her fertility.  Soon after, Kathryn put in with a low-key threat: "[v]indictive people… will end up broke and alone… I'll be praying for you Amy[.]"  We will respectfully proceed consistent with the tone set by your clients, and decline to do more than what is legally required—which is nothing further.

We will close with this.  After Clayton made the decision to sue his own father, he told other family members that it was "just business."  This was probably truthful, as far as Clayton's intentions went.  But electing to have a "business relationship" with your dad has consequences—one of which is that you *never* get to trade on "sentimentality" again.  So when Clayton now insists, for example, that he would be able to grieve better if our client sent him a Cartier watch, we don't attach much weight to that.  Whatever merit such a request might have, in an ordinary father/son relationship, does not carry over into the "business relationship" Clayton opted for.

At bottom, your clients have no cause of action against Amy, nor is there any jurisdiction over her in Ohio.  If your clients elect to proceed in court, consistent with your threat, we will look forward to the opportunity to elaborate further on the parties' history—and likely seek remedies of our own.  Please advise your clients accordingly.[1]

Thank you for your attention to this matter.

Very truly yours,

Adam L. Rosenberg  
arosenberg@kellerrohrback.com

4868-7114-3865, v. 2

---

[1] To the extent your clients are legitimately entertaining the possibility of litigation—meritless as it may be—please remind them of their duty to preserve evidence.  We note that some relevant social media disappeared in the last few days.

# KELLER ROHRBACK L.L.P.

LAURIE B. ASHTON AZ, CO**
ROBERT M. BARTELS AZ
KENNETH A. BLOCH WA**
RACHEL C. BOWANKO CA, WA
KAREN E. BOXX WA**
GRETCHEN FREEMAN CAPPIO MI, WA
ALISON CHASE AZ, CA
FELICIA J. CRAICK WA
ROB J. CRICHTON WA
ADELE DANIEL WA
JULI FARRIS CA, WA
ERIC J. FIERRO AZ
STEPHANIE A. FIERRO AZ, WA
MIREN FIRST WA
KYLIE N. FISHER WA
WILLIAM L. FLEMING WA
ALISON S. GAFFNEY WA

LAURA R. GERBER WA
MATTHEW M. GEREND WA
GARY A. GOTTO AZ, MT
BENJAMIN GOULD CA, WA
CHRISTOPHER GRAVER AZ
ZACHARY W. GUSSIN WA
IRENE M. HECHT WA**
GARRETT HEILMAN IL, WA
SCOTT C. HENDERSON WA
DEAN N. KAWAMOTO CA, DC, WA
RON KILGARD AZ, DC, NY
KATHERINE J. KLEIN CO
DAVID J. KO WA
ERIC R. LALIBERTE WA
BENJAMIN J. LANTZ WA
CARI CAMPEN LAUFENBERG WA
JEFFREY LEWIS CA

ANDREW N. LINDSAY WA
DEREK W. LOESER NY, WA
ERIC G. LOMBARDO WA
HOLLY E. LYNCH WA
KATHRYN MCCALLUM WA
RYAN MCDEVITT MI, WA
ERIC N. MATTESON AZ, CO
MATTHEW S. MELAMED CA
DANIEL MENSHER OR, WA
KEIL M. MUELLER NY, OR
NATHAN L. NANFELT WA
SARAH R. OSBORN OR, WA
YOONA PARK OR
MATTHEW J. PREUSCH CA, OR
SYDNEY READ CA, CO, WA, WY
ERIN M. RILEY WA, WI
ADAM L. ROSENBERG AZ WA

JOSHUA L. ROSS OR, WA
STEVEN N. ROSS WA**
CHRIS RYDER WA
MARK D. SAMSON AZ, DC
LYNN LINCOLN SARKO AZ, DC, WA, WI
CHRISTOPHER L. SPRINGER CA
NATIDA SRIBHIBHADH WA
THOMAS A. STERKEN WA
BETH M. STROSKY WA
PAUL A. TONELLA WA
HAVILA C. UNREIN CA, MT, WA**
JENNIFER S. WAGNER OR
MICHAEL WOERNER WA
JEREMY P. YATES WA

** OF COUNSEL

May 30, 2024

**VIA E-MAIL AND U.S. MAIL**

Joseph Cindric
Dworkin & Bernstein
60 South Park Pl.
Painesville, Ohio 44077

  Re: The Carmen Family Gift Trust – Second Response

Dear Mr. Cindric:

  Thank you for your May 16th letter, though, it is apparent there is a communication gap. By no means did we "confirm that assets of the Carmen Family Gift Trust… were improperly distributed, transferred and/or misappropriated…" Please allow this letter to address that misunderstanding and others below.

  First, we are aware of no existing duty on Amy's part to furnish to your clients any information at all. Though you refer obliquely to "Ohio law" no less than four times in your letter, you cite not a single statute, case, or term of the trust. Particularly notable, you do not seem to acknowledge that the Carmen Family Gift Trust itself waived reporting requirements "[t]o the full extent permitted by law" (Sect. 7, ¶ EE), including any duty to:

- Notify any beneficiary of the existence of any trust;

- Notify any beneficiary of a new trusteeship; or, *inter alia*,

- Furnish copies of the trust, reports, or other information, periodically or upon request.

*Id.* This is an effective waiver under Ohio law, which, under ORC 5801.04, only mandates reporting obligations to "current beneficiaries." Your clients have never been, and are not now, "current beneficiaries" (*see* ORC 5801.01(F)). Kathryn and Clayton's receipt of anything from the Carmen Family Gift Trust was always subject to the occurrence, or non-occurrence, of

**Exhibit 5**

Joseph Cindric  **KELLER ROHRBACK L.L.P.**
May 30, 2024
Page 2

various events and a power of appointment.  At most, they were at one point *contingent* beneficiaries, who never had any organic right to demand anything of Amy.  And even if your clients were now current beneficiaries (though, they are not), reporting duties do not follow a trustee who resigns when, as here, there was a co-trustee and/or successor trustee at the time.  *See* ORC 5808.13(C).

Please advise if the foregoing laws and obligations are in any respect misstated.  Again, the absence of any citations in your correspondence suggests that the above is accurate.

That being said, we're happy to provide you some additional information.  You should not consider it an "accounting"—which Amy has no duty to provide—nor a waiver of Amy's right to decline further involvement with your clients.  This is merely a courtesy, so your clients have the closure of generally knowing what happened.  Amy was the trustee from June 13th to June 30th, in 2017.  A copy of the trust bank account for that month is enclosed (App. A), along with the nature of the expenses (App. B), to give you a sense of trust management at the time.  Money came in, and the trustee applied that money for Eric's benefit, consistent with his beneficial rights under the trust.

During Amy's brief tenure as trustee, for various reasons—including greater flexibility and asset protection—she exercised her rights under ORC 5801.07 to designate South Dakota as the trust's principal place of administration.  Your clients did not receive notice because the statute did not require it; and because they treated Eric atrociously—to the point that he feared for his life—as chronicled in our prior letter.  A professional co-trustee was appointed on June 22, and Amy resigned just over a week later.  *See* App. C.  In August, under South Dakota's trust laws (*see* S.D. Codified Laws § 55-2-15), the Carmen Family Gift Trust was substantially reformed to disinherit your clients, consistent with Eric's express wishes.  Again, governing law did not require notice to your clients, and none was provided.

When I referred to the Carmen Family Gift Trust being "discontinued," I meant as to your clients' rights as contingent beneficiaries.  Mechanically, the trust still exists, but in a different jurisdiction, with different terms, and with different beneficiaries.  If you have authority suggesting that your clients are entitled to know anything beyond what has already been shared—regarding the trust or otherwise—please provide it so that we can consider and discuss.

Joseph Cindric
May 30, 2024
Page 3

**KELLER ROHRBACK L.L.P.**

Thank you for your attention to this matter.

Very truly yours,

Adam L. Rosenberg
arosenberg@kellerrohrback.com

Enclosures

4886-3690-1825, v. 2

# APPENDIX C

# RESIGNATION
# OF
# TRUSTEE

I, AMY CARMEN, of Gates Mills, Ohio, acknowledging the Amendment and Restatement of Trust Agreement, dated August 11, 2017, by and between ERIC H. CARMEN, of Gates Mills, Ohio, as Grantor, and ███████████████ South Dakota, as Trustee, amending and restating the trust instrument dated July 11, 2007, establishing the Carmen Family Gift Trust (the "Trust"), hereby resign as Co-Trustee of Trust. ███████████████████████████████████ South Dakota, will serve as the sole Trustee of the Trust.

Dated this 11th day of August, 2017.

_____
AMY CARMEN

STATE OF  OHIO           )
                         : SS
COUNTY OF  Cuyahoga  )

On this, the 11th day of August, 2017, before me, the undersigned officer, personally appeared AMY CARMEN, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public, Michael Dent
My Commission expires: mar 24 2019

MICHAEL DENT
Notary Public, State of Ohio
My Commission Expires Mar. 24, 2019
Recorded in Lake County