THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KATHRYN CARMEN, ET AL. <br><br> PLAINTIFFS, <br><br> VS. <br><br> AMY CARMEN <br><br> DEFENDANT. | CASE NO. 1:24-CV-01331 <br><br> JUDGE: DAVID A. RUIZ |

## AMY CARMEN'S
## MEMORANDUM IN SUPPORT OF MOTION TO STAY DISCOVERY

### I. Introduction

This case stems from the Plaintiffs' disappointment that their father, Eric Carmen ("Eric") used trust law in Ohio and South Dakota to disinherit them. As clearly set forth in the pleadings and the recent motion for judgment on the pleadings, Eric made his decision after enduring years of abuse, mockery, and greedy litigation from Plaintiffs. While Eric's motivations are well-known, well-founded, and well-documented, they aren't even necessary to resolve this case entirely in Defendant Amy Carmen's ("Amy") favor. Rather, it is clear as a matter of law that Eric followed the trust code in Ohio and South Dakota to remove Plaintiffs from their role as contingent beneficiaries of the 2007 Carmen Family Gift Trust ("2007 CFGT") and to include Amy – Eric's beloved wife — as a beneficiary of the 2017 Trust. Furthermore, Plaintiffs have already waived all claims against Amy, Eric, and any trusts from which they hold a beneficial interest. Therefore, as of the 2020 settlement agreement

1

[Doc. #18, filed under seal], Amy has immunity for the claims set forth in the Amended Complaint [Doc #11].

In addition to Amy having immunity, a fact that alone justifies a stay of discovery pending the dispositive motion, there is a basis to permit a stay to protect sensitive information from reaching Plaintiffs (who are not entitled to it) or – worse – from reaching the public.

II. **Procedural Posture**

Plaintiffs filed their First Amended Complaint [See Doc #11] on December 9, 2024 ("FAC"). Amy filed her answer to the FAC, including therewith a copy of March 2020 settlement agreement, filed under seal. [*See* Doc #16 and #18]. Because the law is overwhelmingly in favor of Amy's position – both due to Eric following the appropriate trust law and due to the settlement and release signed by Plaintiffs – Amy filed a motion for judgment on the pleadings on December 30, 2024. [Doc #22, #23, the "MJOP"]. Plaintiffs requested and obtained an extension to file their Brief in Opposition and did file said brief on February 12, 2025 [Doc #27]. Amy's Reply in Support is due February 26. Once this Court grants Amy's MJOP, the entirety of the case will be disposed of and the litigation will terminate.

On December 23, 2024, Plaintiffs provided Amy's counsel copies of subpoenas they issued to the Trustee of the 2017 Trust, a South Dakota financial institution ("SD Trustee") and to Civista Bank ("Civista"). See **Exhibits 1 and 2,** the "Subpoenas" attached hereto and incorporated herein. The Subpoenas seek a wide range of information about Amy, the 2017 Trust, and Eric. The SD Trustee sent objections to

2

the subpoena directly to Plaintiffs' counsel. *See* **Exhibit 3,** the "Objections" attached hereto and incorporated herein. Amy has filed a Motion for Protective Order concerning the information sought in the Subpoenas. Also in December, Plaintiffs served discovery requests on Amy including 25 interrogatories and 41 requests for production of documents. Without a stay of discovery, it is likely that Plaintiffs will issue additional subpoenas and/or discovery requests which will lead only to more discovery disputes. All of these disputes are waste of judicial resources, time, and money once this case is resolved in Amy's favor via her MJOP.

### III. Law and Analysis

The courts have an inherent power to stay discovery while it considers preliminary matters that may dispose of the entire case. *Gettings v. Bldg. Laborers Local 310 Fringe Bens. Fund*, 349 F.3d 300, 304 (6th Cir.2003), citing *Hahn v. Star Bank*, 190 F.3d 708 (6th Cir.1999). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of…its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The decision to stay discovery is within this Court's broad discretion which will be overturned only if there is "substantial prejudice" against the nonmoving party. *Hahn* at 719, citing *Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir.1989).

It is appropriate to stay discovery "where claims are subject to dismissal 'based on legal determinations that could not have been altered by any further discovery.'" *Huber Heights Veterans Club, Inc. v. Bowman*, S.D.Ohio No. 3:22-cv-00159, 2022

U.S. Dist. LEXIS 192149 (Oct. 20, 2022), quoting *Muzquiz v. W.A. Foote Mem'l Hosp., Inc.*, 70 F.3d 422, 430 (6th Cir.1995). In deciding a motion to stay discovery, the Court should "weigh the burden of proceeding with discovery upon the party from whom discovery is sought against the hardship which would be worked by a denial of discovery." *Bickerstaff v. Cuyahoga Cty.*, N.D.Ohio No. 1:18-cv-1142, 2019 U.S. Dist. LEXIS 59827 (Apr. 8, 2019), quoting *Ray v. Dir., Ohio Dep't of Health*, S.D.Ohio No. 2:18-cv-272, 2018 U.S. Dist. LEXIS 174305, *4 (Oct. 10, 2018). A stay causes less hardship than a complete prohibition. *Ray* at *4. As cited in *Bickerstaff*, "…a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

> In deciding whether to grant a stay, courts commonly consider factors such as: (1) the need for a stay; (2) the stage of litigation; (3) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; (4) whether a stay will simplify the issues; and (5) whether burden of litigation will be reduced for both the parties and the court.
>
> *Cross Country Mortg., Inc. v. Messina,* N.D.Ohio No. 1:19-cv-1021, 2019 U.S. Dist. LEXIS 244407, *2 (Oct. 8, 2019), quoting *Hubbell v. NCR Corporation*, S.D.Ohio No. 2:17-cv-807, 2018 U.S. Dist. LEXIS 58205, *1 (Apr. 5, 2018); see also *Series 15-09-321 v. Progressive Corp.*, N.D.Ohio No. 1:23-cv-02015-CEF, 2024 U.S. LEXIS 204559 (Sep. 27, 2024).

### A. Further discovery will not alter Plaintiffs' claims

No amount of discovery will save Plaintiffs' claims. Amy's MJOP seeks judgment in her favor based on "legal determinations" of relevant trust law and a claim of immunity as a result of settlement.[1] As set forth in Amy's MJOP, Eric

---

[1] Plaintiffs own counsel stated in a pretrial conference that they understood this case involved some "threshold legal issues." A stay in discovery is available precisely to allow the Court to determine those threshold issues before the parties and Court waste time and resources"

4

followed all relevant trust law in Ohio and South Dakota. Plaintiffs were never entitled to notice of a change in primary administration from Ohio to South Dakota. No discovery or subpoena responses will make Amy liable for a breach of duty where the law imposed *no duty* on her to proactively inform contingent beneficiaries of the change in situs. Similarly, no amount of factual discovery will change South Dakota's trust code which did not require Eric (the grantor) or the SD Trustee to inform contingent beneficiaries who were takers in default of a power of appointment.

### B. Plaintiffs have waived their claims, making Amy immune to such claims

The Supreme Court recognizes that a defendant with a claim of qualified immunity "is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). This has been adopted and followed in Ohio's Northern District. *See, Bickerstaff*, 2019 U.S. Dist. LEXIS 59827. In her MJOP, Amy analyzes the 2020 settlement agreement, to which both Plaintiffs and she are parties. There is no dispute that Plaintiffs waived all claims – known and unknown, present and future – against Amy, Eric, and any entity in which they have a beneficial interest.

As of 2020, the 2007 CFGT had already moved to South Dakota and been restated into the 2017 Trust. *All* of the actions Plaintiffs allege constitute Amy's breaches of fiduciary duty occurred before 2020.[2] Eric had a beneficial interest in the 2017 Trust.[3] Plaintiffs sought money from Eric and sued him in 2019. In order to get

---

[2] In fact, the documents as cited in the MJOP clearly show that Amy ceased her role as cotrustee on August 11, 2017 and therefore she had no further duties owed to Plaintiffs after that time.
[3] Even under Plaintiffs' argument that the 2007 CFGT should still be operative, Eric would have had a beneficial interest in that trust in 2020. Therefore, regardless of whether Plaintiffs agree that the

5

that money – and in order for Eric and Amy to have peace *forever* – the Plaintiffs entered the March 2020 settlement agreement. Like it or not, that settlement waived the claims that they now seek to litigate.

The Plaintiffs were not forced to settle in March 2020 – they chose to do so. The Plaintiffs were not tricked in March 2020 – they had competent counsel advise them as to the settlement. The Plaintiffs were not taken advantage of in March 2020 – they received a sizeable cash payment from Eric in exchange for the release of claims. If this Court were to allow discovery to proceed, Plaintiffs will come into sensitive financial information *that they have negotiated away their right to ever receive*.

The Supreme Court and Northern District of Ohio have determined that a defendant with qualified immunity is entitled to avoid discovery. Amy's Answer and MJOP include a defense akin to such immunity and she should be entitled to the same benefit. To stay discovery now will avoid requiring Amy to defend an action that Plaintiffs already waived a right to more than half a decade ago.

### C. A stay will not unduly prejudice or tactically disadvantage Plaintiffs; a stay will simplify the issues and reduce the burden of litigation for the Court and parties.

This case remains in its infancy. There have been only two subpoenas and one set of discovery requests issued so far. There is a risk, however, that Plaintiffs will forge ahead with further discovery and/or Subpoenas at any moment. A stay will not unduly prejudice Plaintiffs. The stay need last only until this Court rules on the

---

transfer and restatement of the 2007 CFGT was proper, they waived claims against that entity as well as against Eric and Amy when they signed the 2020 settlement agreement.

6

MJOP (which is still being briefed). In the unlikely event the Court denies the MJOP, the stay could be as short as a few weeks – hardly a burden when Plaintiffs themselves recently sought a needed two-week extension for their brief in opposition. In the more likely event, however, the Court grants the MJOP, Plaintiffs will suffer no burden at all – their claims will dismissed as a matter of law and/or a result of them having already been waived. Such dismissal will *remove* (not just reduce) the burden of litigation on all parties and the Court. It will also eliminate (not just simplify) the issues.

The stay requested herein is distinguishable from several cases in this and the Southern District that denied motions on the theory that a party is entitled to a "determination of its rights and liabilities without undue delay." *Crosscountry Mortg., Inc.* 2019 U.S. Dist. LEXIS 244407 at *5. When a motion to dismiss is predicated on a lack of personal jurisdiction or venue, a stay may not be appropriate because the litigation can proceed in an appropriate jurisdiction or venue and the discovery will be used in the new proceeding. *Id.* citing *DSM Desotech, Inc. v. Momentive Specialty Chems., Inc.*, S.D.Ohio No. 2:15-cv-70, 2015 U.S. Dist. LEXIS 158632 (Nov. 24, 2015); *Slate Rock Constr. Co. v. Admiral Ins. Co.*, S.D.Ohio No. 2:10-cv-01031, 2011 U.S. Dist. LEXIS 46846 (May 2, 2011); *Oxford Lending Group, LLC v. Underwriters at Lloyd's London*, S.D.Ohio No. 2:10-cv-00094, 2010 U.S. Dist. LEXIS 109006 (Oct. 12, 2010). Unlike stays sought in cases due to disputes of venue, when the Court grants *Amy's* MJOP, the entirety of the case will be resolved on its merits – the Court will find that Amy is not liable for a breach of duty **as a matter of**

*law* and/or that Plaintiffs ***released and waived*** all such claims against Amy and any trust in which she or Eric had a beneficial interest. Plaintiffs will not be free to re-file the litigation and any discovery obtained would have been for nought (and in fact, would be damaging to Amy, *see infra*).

Amy's case is also distinguishable from the facts resulting in a denial of stay in *Crosscountry* and *McMillen.* In *Crosscountry*, the defendant sought a stay of discovery *after* the defendant served his *own* round of requests for production of documents. *Crosscountry* 2019 U.S. Dist. LEXIS 244407 at *7. In *McMillen*, the trial court denied a motion to stay discovery where movant had served written discovery on plaintiffs. *McMillen v. Windham,* W.D.Ky. No. 3:16-CV-558-CRS, 2018 U.S. Dist. LEXIS 15665, *3 (Jan. 30, 2018). In Amy's case, however, she has not issued Subpoenas and has not served any discovery requests on Plaintiffs. Amy has, in fact, has sought strong protective orders to avoid disclosure of sensitive information and she has filed documents under seal and redacted motions as necessary.

***It was Plaintiffs' counsel*** who noted during a pretrial conference that this matter has "***threshold legal issues***" that may need to be decided before matters proceed. Amy agrees with Plaintiffs' counsel – these threshold legal issues should be decided before discovery proceeds and causes *her* harm.

### D. Amy (and the SD Trustee) will face hardship if discovery proceeds

Everyone can agree that the "bell cannot be unrung" and that once its open, you can't put everything back in Pandora's box. Beyond just being pithy idioms, these

8

phrases express the fact that once an injustice is done, it cannot be repaired. If discovery proceeds, Amy faces a risk of a hardship that cannot be corrected.

The Subpoenas seek a wide-range of confidential information including all communications between the SD Trustee and Amy or other people, all assets of the 2017 Trust (*of which Plaintiffs are not beneficiaries*), copies of trust reports and accountings. This information, if turned over to Plaintiffs, will give them countless details about a Trust to which they have no rights; their father spent extensive time, money, and energy to prevent Plaintiffs from obtaining *exactly* that information. As Amy is the current beneficiary of the 2017 Trust, it will give Plaintiffs insight into her private finances – again, information that Eric never intended Plaintiffs to have. Plaintiffs specifically *negotiated away* their rights to any such information in March 2020 when they accepted their father's money to end litigation.

Beyond the violation of personal privacy that would occur, there is a risk that this very private and sensitive information would reach the general public. Eric was a well-known musician and public figure. His death was reported nationally and sensationalized in outlets such as TMZ. Media sought photographs and police reports related to his death via FOIA requests. Amy – consistent with Eric's wish to keep such information private – took great care to obtain court orders to avoid the media from further sensationalizing her husband's death. Since the filing of this litigation, this dispute has been referenced in three local newspaper articles and a nationally-circulated magazine. The media coverage includes quotes from Plaintiffs which are, in most cases, patently false and meant to be vindictive against Amy and their father.

Plaintiffs have also posted about their father and commented about the media stories in social media. *See, e.g.,* **Exhibit 4**, Kathryn Carmen post. Allowing Plaintiffs more information only gives them more ammunition to disparage Amy and Eric not to mention giving them information that Eric spent considerable effort to keep from them.

## IV. Conclusion

Eric never intended Plaintiffs to have information about the 2017 Trust nor to benefit from it. Amy has taken steps in this litigation and elsewhere to avoid disclosure of information that is personally sensitive and private to her and her late husband. Plaintiffs waived and signed away their claims against Amy, Eric, and the 2017 Trust; Amy is *immune* from their claims. Disclosing this sensitive information to Plaintiffs is futile for a case that will be determined at any early stage as a matter of law. Disclosing this sensitive information risks it getting not only into Plaintiffs' hands, but into the wider media as well. This Court can prevent all of these risks and save the parties and itself time, money, and resources by issuing a stay until the "threshold legal issues" are decided.

10

WHEREFORE, Amy moves this Court to issue a stay of discovery until there is a ruling on the Motion for Judgment on the Pleadings.

Date:  February 14, 2025

>Respectfully submitted,
>
>*/s/ Jessica S. Forrest*
>*/s/ Timothy J. Gallagher*
>Jessica S. Forrest (0087602)
>Timothy J. Gallagher (0086764)
>REMINGER CO., LPA
>200 Public Sq., Ste. 1200
>Cleveland OH 44114
>(216) 430-2162; Fax: (216) 687-1841
>jforrest@reminger.com
>tgallagher@reminger.com
>**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing *Memorandum* was served via e-mail upon Plaintiffs' counsel on this 14th day of February 2025 at:

Richard N. Selby, II, Esq.
Joseph N. Cindric, Esq.
**Dworken & Bernstein, Co. LPA**
rselby@dworkenlaw.com
jcindric@dworkenlaw.com
*Attorneys for Plaintiffs*

>*/s/ Timothy J. Gallagher*
>*/s/Jessica S. Forrest*
>Timothy J. Gallagher (OH Bar# 0086764)
>Jessica S. Forrest (OH Bar # 0087612)
>*Attorneys for Defendant*