THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KATHRYN CARMEN, ET AL.<br><br>PLAINTIFFS,<br><br>VS.<br><br>AMY CARMEN<br><br>DEFENDANT. | CASE NO. 1:24-CV-01331<br><br>JUDGE: DAVID A. RUIZ |

MEMORANDUM IN SUPPORT OF
DEFENDANT AMY CARMEN'S MOTION FOR PROTECTIVE ORDER

I.     INTRODUCTION

Eric Carmen's ("Eric") adult children – the Plaintiffs – are upset that they are not inheriting from their father. While they are well-aware of their own actions and attitudes that resulted in Eric disinheriting them, they nonetheless seek to invade a 2017 Trust of which they are not beneficiaries. In order to do this, they have requested financial information concerning the 2017 Trust as well as personal information of Amy Carmen ("Amy"), and Eric. This is information to which they have never been entitled and will never be entitled. On December 23, 2024, Plaintiffs provided Amy's counsel copies of subpoenas they issued to the Trustee of the 2017 Trust, a South Dakota financial institution ("SD Trustee") and to Civista Bank ("Civista"). *See* **Exhibits 1 and 2** the "Subpoenas" attached hereto and incorporated herein.

In this Motion, Amy specifically seeks a protective order pursuant to FRCP 26(c)(1) to prevent Plaintiffs from receiving the documents requested via the Subpoenas as they are not and will not ever be entitled to the same. Amy has

1

simultaneously filed a motion to stay all discovery pending the outcome of her Motion for Judgment on the Pleadings ("MJOP") and she incorporates herein that motion and its memorandum in support.

## II. LAW & ARGUMENT

### A. Legal Standard for Protective Orders

FRCP 26(b) provides the limit for discovery matters:

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

This Court "may, for good cause shown, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" FRCP 26(c)(1). A protective order can forbid disclosure entirely or it can limit the scope of discovery and disclosure to certain matters. FRCP 26(c)(1)(A), (D). The Sixth Circuit has found that "[g]ood cause exists if "specific prejudice or harm will result" from the absence of a protective order." *Fears v. Kasich (In re: Ohio Execution Protocol Litig.)*, 845 F.3d 231, 236 (6th Cir.2016), quoting *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop*), 661 F.3d 417, 427( 9th Cit.2011).

In deciding whether to issue a protective order, the court "must balance the "right to discovery with the need to prevent 'fishing expeditions.'" *Fears* at 236-237, quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir.2012). The courts have

"wide discretion in balancing the needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir.1991).

> B. **Permitting this discovery will provide information to Plaintiffs to which they have never and will never be entitled – thus placing an undue burden on Amy having her private information disclosed.**

The concept of undue burden is generally thought of in the context of the burden a response will place on the person or entity from whom discovery is sought:

> Undue burden is to be assessed in a case-specific manner considering "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."
>
> *New Prods. Corp. v. Dickinson Wright PLLC (In re Modern Plastics Corp.)*, 890 F.3d 244, 251 (6th Cir.2018), citing, *Am. Elec. Power Co., Inc. v. United States* (S.D. Ohio 1999).

The Sixth Circuit notes, however that "discovery has limits and…these limits grow more formidable as the showing of need decreases." *Serrano*, 699 F.3d at 901, quoting, 8A Charles Alan Wright & Arthur R. Miller, et. al., Federal Practice and Procedure § 2036 (3d ed.2012). Therefore, where there is "no occasion for the inquiry and it cannot benefit the party making it," then even a "slight inconvenience" will justify a protective order. *Id.*

In this instance, the party from whom discovery was sought (the South Dakota Trustee) has already issued objections in response to Plaintiff's counsel. *See* Objections, **Exhibit 3** to the Motion to Stay Discovery. However, that does not tell the entire story of the burden. Amy herself will be burdened, annoyed, and harassed by

3

the production of this information and Plaintiffs do not have a need for the information while Amy's dispositive motion is still pending.

Disclosure of the information sought in the Subpoenas will provide Plaintiffs with information about Eric and Amy's finances, spending, and details of assets of the 2017 Trust which Eric took such great care to keep confidential. As set forth in the various motions and Amy's answer, Eric consulted with financial and seasoned experts in trust law in multiple states before undertaking the changes he made in 2017. He chose to change the situs of the 2007 Carmen Family Gift Trust ("CFGT") in part because of the added privacy protections offered by South Dakota's trust law. He did not discuss the 2017 Trust with others outside of his wife and professional advisors. He did not wish to share his new address with Plaintiffs when changed his domicile in 2018. Eric repeatedly indicated his desire for privacy in all aspects of his life – but, especially when it came to his financial and legal matters.

Disclosing the information sought in the Subpoenas would lead to irreparable harm and unduly burden Amy. Plaintiffs – who are vocal and consistent in their dislike of Amy – will have access to information that neither she nor Eric *ever* wanted them to have. And, once this Court finds in Amy's favor on her pending dispositive motion, no one will be able to unring the bell: Plaintiffs will forever have private financial information to which they were never entitled, effectively undoing Eric's work spanning nearly a decade to maintain privacy from everyone, most especially from Plaintiffs.

4

At this time, there is "no occasion for the inquiry" of the Subpoenas and a protective order should be granted to avoid any burden on Amy (and the South Dakota Trustee). *Serrano*, 699 F.3d at 901

### C. Permitting this discovery will result in annoyance and/or embarrassment for Amy.

It is no secret that Plaintiffs have spoken with the media on many occasions. Clayton Carmen wrote about his father on social media shortly after his death. *See,* **Exhibit 3, Clayton's post.** Kathryn Carmen continues to post on social media about Amy, Eric, and about Kathryn's estrangement from her own father. *See,* **Exhibit 4, Kathryn's comment**. Plaintiffs characterized their father as a paranoid conspiracy theorist who was manipulated by Amy to disinherit his children. In reality, the rift between Eric and Plaintiffs began years before Eric met Amy and was all but solidified by the time Amy and Eric married in 2016. The breakdown of the relationship between Plaintiffs and Eric is memorialized in years' worth of emails dating back to 2011 – well before Amy and Eric ever met.

Plaintiffs' ongoing use of traditional and social media to speak out against Eric and Amy makes clear that they would use information disclosed by this discovery to publicly embarrass and harass Amy. There's a high risk that if they obtain access to these records, they will make Amy the center of a public discussion about her private spending, banking, and assets. This cannot be allowed to occur. Amy is a private citizen who did not take part in amending the 2007 Carmen Family Gift Trust. She did not encourage her husband to make such amendments and she did not ask to be made a beneficiary of the 2017 Trust. When Eric died, Amy took great care to inform

5

his family and to provide his children with thoughtful gifts such as bracelets and cufflinks containing his fingerprint and urns containing his ashes.

Any public disclosure of her private finances would clearly be done to harass and annoy Amy. And, given the Plaintiffs past use of social media, their recent statements to traditional media, and their longstanding animosity towards Amy, such a public disclosure is highly likely.

There is no reason to take such a risk; the Plaintiffs do not need the documents sought by the Subpoena to defend against Amy's dispositive motion. Instead, this Court can issue a protective order as to these Subpoenas and a stay of other discovery until the Court decides the motion. At that time, Amy is confident the Court will see that not only did Eric follow all relevant laws with regard to removing Plaintiffs from his estate plan, but Plaintiffs negotiated away and released any potential claims against Eric, Amy, and their trusts in March 2020. A decision in Amy's favor will completely obviate the need for any discovery and will resolve this matter once and for all.

III. CONCLUSION

Plaintiffs cannot demonstrate a current right under the 2017 Trust to obtain the information which they seek via the Subpoenas. Furthermore, at this juncture in the case, they have no need for such information to respond to the pending Motion for Judgment on the Pleadings. To allow Plaintiffs to obtain these records would be an irreversible disclosure of information that neither Amy nor Eric ever intended them to have. If and when this Court rules in Amy's favor on her pending Motion, that

disclosure cannot be undone. From the moment they receive the records, Amy will have been unduly burdened by the disclosure of her private information and will forever be under the threat that the Plaintiffs could further disclose that information to the public, causing further annoyance and harassment.

For these reasons and the reasons set forth in the Motion to Stay Discovery, Amy moves this Court for a protective order denying discovery of the information sought by the Subpoenas.

Date: February 14, 2025

Respectfully submitted,

*/s/ Jessica S. Forrest*
*/s/ Timothy J. Gallagher*
Jessica S. Forrest (0087602)
Timothy J. Gallagher (0086764)
REMINGER CO., LPA
200 Public Sq., Ste. 1200
Cleveland OH 44114
(216) 430-2162; Fax: (216) 687-1841
jforrest@reminger.com
tgallagher@reminger.com
***Attorneys for Defendant***

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing *Memorandum* was served via e-mail upon Plaintiffs' counsel on this 14th day of February 2025 at:

Richard N. Selby, II, Esq.
Joseph N. Cindric, Esq.
**Dworken & Bernstein, Co. LPA**
rselby@dworkenlaw.com
jcindric@dworkenlaw.com
*Attorneys for Plaintiffs*

*/s/ Timothy J. Gallagher*
*/s/Jessica S. Forrest*
Timothy J. Gallagher (OH Bar# 0086764)
Jessica S. Forrest (OH Bar # 0087612)
*Attorneys for Defendant*

7