**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| KATHRYN CARMEN, *et al.*, | ) CASE NO. 1:24-cv-01331 |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) JUDGE DAVID A. RUIZ |
| | ) |
| AMY CARMEN, | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |
| | ) |

### I.  Background

Plaintiffs Kathryn Carmen and Clayton Carmen ("Plaintiffs") are the adult children of decedent Eric H. Carmen. (R. 1-2, PageID# 607, ¶¶1-3). Defendant Amy Carmen was the spouse of Eric H. Carmen at the time of his death, but is not the mother of Plaintiffs. *Id*. at ¶¶25-29. Plaintiffs filed suit against Defendant in state court, and—after amending their initial complaint—raise the following causes of action: (1) Breach of Trust – Duty of Good Faith in violation of Ohio Revised Code (O.R.C.) § 5808.01; (2) Breach of Trust – Duty of Loyalty to Beneficiaries in violation of O.R.C. § 5808.02; (3) Breach of Trust – Duty of Impartiality in violation of O.R.C. § 5808.03; (4) Breach of Trust – Duty to Act as Prudent Person in violation of O.R.C. § 5808.04; (5) Breach of Trust – Self-Dealing; (6) Breach of Trust – Change of Situs; (7) Breach of Trust – Appointment of South Dakota Financial Institution; (8) Common Law Breach of Fiduciary Duty; (9) Fraud (Fraudulent Concealment); and, (10) Intentional Interference With an Expectancy of an Inheritance. *Id*. at ¶¶110-150. (R. 11). Defendant removed this action to this Court on the basis of diversity of citizenship. (R. 1).

Pending before the Court is Defendant's motion for judgment on the pleadings. (R. 22).[1] Plaintiffs filed a memorandum in opposition to said motion (R. 27), and Defendant has filed a reply in support. (R. 31). For the reasons stated below, the Court GRANTS Defendant's Motion for Judgment on the Pleadings and dismisses the case.

## II. Applicable Standard

In the Sixth Circuit, a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is reviewed under the "same standard as applies to a review of a motion to dismiss under Rule 12(b)(6)." *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 465-66 (6th Cir. 2017); *accord K&L Trailer Leasing, Inc. v. Fellhoelter*, 630 B.R. 81, 83 (Bankr. E.D. Tenn. 2021) ("Courts apply the same standard for Fed. R. Civ. P. 12(c) motions as for Rule 12(b)(6) motions"). As explained by the Court of Appeals:

> A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6). *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). A court evaluating that type of motion thus must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). *See Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017). Courts must accept as true all well-pleaded factual allegations, **but they need not accept legal conclusions**. *Iqbal*, 556 U.S. at 678. And the well-pleaded factual allegations must "plausibly give rise to an entitlement to relief." *Id*. at 679. Pleaded facts will do so if they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Pleaded facts will not do so if they "are 'merely consistent with' a defendant's liability." *Id*. (quoting *Twombly*, 550 U.S. at 557).

*Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (emphasis added).

Federal courts must "construe the complaint in the light most favorable to the plaintiff, accept all

---

[1] A sealed and unredacted version of the motion was also filed. (R. 23). This Court references the unredacted version throughout.

well-pleaded factual allegations as true, and draw all reasonable inferences in [the plaintiff's] favor." *Watkins v. Healy*, 986 F.3d 648, 660 (6th Cir. 2021) (citations omitted).

### III. Summary of Factual Allegations in the Amended Complaint

On July 11, 2007, Eric Carmen entered into a "Trust Agreement For The Carmen Family Gift Trust (the "Trust") with Fred N. Carmen, Trustee, which was to be governed by the laws of Ohio. (Doc. No. 11- 1, PageID# 189, 207). "To the full extent permitted by law," Eric Carmen "waive[d] any provision of the Ohio Trust Code or any similar law of any jurisdiction that would otherwise require the Trustee to perform … the following acts:" notifying any beneficiary of the existence of the Trust, the identity of the Trustee, furnishing to any beneficiary a copy of the Trust Agreement, etc. (R. 11-1, PageID# 205-206). Upon Eric Carmen's death, all Trust assets were to be issued and otherwise distributed to his descendants. *Id*. at ¶ 190. He reserved no right to amend or revoke the Trust. *Id*. at PageID# 207. Plaintiffs allege they only became aware of the presence of the Trust *after* their father's death. (R. 11, PageID# 166, ¶59).

Eric's brother, Fred Carmen, served as trustee from its formation until on or about December 23, 2015, as Eric Carmen had instituted an adversarial action against Fred Carmen on or about November 12, 2015, in probate court, which lasted several years. (R. 11, PageID# 164, ¶¶40-41, 44; R. 16, PageID# 301, ¶¶40-41, 44). After Fred Carmen resigned, Sheldon Berns, Eric Carmen's uncle, served as a trustee for a brief period of time, before being succeeded by Jonathan Berns. (R. 11, PageID# 164, ¶¶41-42, R. 11-1, PageID# 198; R. 16, PageID# 301, ¶¶40-44). In approximately May of 2017, Jonathan Berns, as successor trustee of the Trust and on behalf of the Trust, along with Eric Carmen and Fred Berns participated in mediation to resolve the dispute at the center of the adversarial action, which proved successful. (R. 11, PageID# 164, ¶45; R. 16, PageID# 301, ¶45). In June of 2017, Eric Carmen appointed Defendant

Amy Carmen as trustee, whereafter she filed a Notice of Substitution in the same adversarial action. (R. 11-6, PageID# 226-228).

Soon after her appointment, on June 22, 2017, Defendant Amy Carmen: (1) appointed The First National Bank in Sioux Falls ("South Dakota Bank") as a co-trustee of the Trust and changed the situs of the Trust from Ohio to South Dakota. (R. 13, PageID# 252).

On August 11, 2017, Eric Carmen appears to have signed an Amendment and Restatement of Trust Agreement (R. 14, PageID# 292) removing Plaintiffs as beneficiaries and making his spouse the beneficiary in the event he died before her. (R. 14, PageID# 257-259).

On February 5, 2018, the parties to the adversarial action filed a stipulated notice of dismissal with prejudice. (R. 11-10, PageID# 245-256).

In 2019, Plaintiffs and their mother filed suit against Eric Carmen. On March 5, 2020, Plaintiffs herein (the Carmen children) entered into a global Settlement Agreement with their father *and* Defendant Amy Carmen resolving the lawsuit they filed in 2019, as well as any other known or unknown claims whether asserted in the lawsuit or not. (R. 18). The material portions of the Settlement Agreement state as follows:

> 1. This Settlement Agreement (hereinafter referred to as the "Agreement'") is made as of March 24, 2020 by and between Susan Carmen, Clayton Carmen, and Kathryn Carmen (hereinafter referred to as "Plaintiffs") and Eric Carmen **and Amy Carmen** (hereinafter referred to as "Carmens"), each of which is referred to as a "Party" and **both of whom are collectively referred to as the "Parties."**
>
> 2. This Agreement is made as a compromise among the Parties for the complete and full settlement of their claims, disputes and differences, whether or not asserted by a Party in the action styled *Susan Carmen and Clayton Carmen and Kathryn Carmen v. Eric Carmen*, Cuyahoga County Court of Common Pleas, General Division, Case No. CV 19 922580 (hereinafter referred to as the "Lawsuit"). The parties have entered into this Agreement, among other reasons, to avoid the further expense, inconvenience, and burden of protracted litigation and **to completely and finally settle their claims, disputes, and differences**, as set forth herein with neither Party admitting liability or fault.

4

3, The Parties agree that the terms and conditions of **this Agreement shall bind the Parties hereto, their assigns, successors in interest, executors, administrators, trustees, fiduciaries, heirs, and beneficiaries**.

4. This Agreement contains the entire agreement between the Parties with regard to the matters set forth herein. There are no other representations, understandings, promises or agreements, whether verbal or otherwise, in relation thereto, between the Parties, except as are expressly set forth herein.

5. In addition to the provisions contained in provision 4, with the sole exception of any spousal support and/or alimony Eric Carmen is obligated to pay Susan Carmen pursuant to their October 7, 2011 Judgment Entry of Divorce, **the Plaintiffs**, and any respective predecessors, successors, assigns, agents and representatives (hereinafter referred to as the "Plaintiffs Releasing Parties") **hereby release and unconditionally discharge the Carmens, including their respective predecessors, successors and assigns, agents, representatives, and businesses or entities which the Carmens own or in which the Carmens have a legal or beneficial interest, whether an ownership or other interest** (hereinafter referred to as the "Carmens Released Parties"), **from any and all claims, demands, suits, causes of action, rights, debts, liabilities, assessments, obligations or damages, of any kind, from the beginning of the time and onwards**, **including without limitation, those which were or could have been asserted in the Lawsuit, whether such claim, demand, suit, cause of action, right, debt, liability, assessment, obligation or damage, was known or unknown to any or all of the Plaintiffs Releasing Parties, was asserted or not asserted by any or all of the Plaintiffs Releasing Parties against any or all of the Carmens Released Parties**, or was threatened to be asserted or not by any or all of Plaintiffs Releasing Parties against any or all of the Carmens Released Parties **or was matured, contingent, accrued or otherwise**.

***

14. **This Agreement is the result of negotiations between equally situated Parties who have the ability to advance and protect their respective legal and other interests, and each of the Parties have had a full and complete opportunity to review, analyze, evaluate, negotiate, edit and draft the terms and conditions of this Agreement**. Accordingly, this Agreement shall not be strictly construed or enforced against any Party, and any ambiguity in any term or condition contained in this Agreement shall not be interpreted in favor of one Party and against another Party, based upon any rule of construction whose premise is draftsmanship of this Agreement or upon the relative bargaining position of the Parties.

16. This Agreement will be governed by, and construed and enforced under, the

laws of the State of Ohio. The Parties agree that Judge Kelly Ann Gallagher, the presiding judge in the Lawsuit, shall retain jurisdiction over this Agreement. Any disputes among the Parties relating to this Agreement shall be brought in the Cuyahoga County Court of Common Pleas, (to be heard by Judge Kelly Ann Gallagher, if feasible, with the Opposing party agreeing not to object to the Court's jurisdiction of this matter or its assignment to Judge Gallagher).

17. No amendment, modification or waiver of this Agreement, or any of its terms or conditions, shall be binding unless executed in writing and signed by the Party to be bound thereby. No failure or delay on the part of a Party to exercise any right under this Agreement or to enforce any obligation of the other Party under this Agreement shall operate as a waiver, except as expressly set forth herein, nor shall a single, partial or limited exercise of a right or enforcement of an obligation thereof preclude any other or further exercise of the right or enforcement of the obligation, or of the exercise of any other right or enforcement of any other obligation.

(R. 18, PageID# 337-341) (emphasis added).

### IV. Analysis

The Settlement Agreement bars Plaintiffs' claims, as explained herein.

Defendant asserts that even if the Amended Complaint stated any valid claims against her (which she disputes), Plaintiffs have waived their right to pursue those claims based on Plaintiffs' prior Settlement Agreement executed in March of 2020. (R. 23-1, PageID# 369).[2] Defendant points to the explicit language of § 5 of the Settlement Agreement, set forth verbatim above, and points out that the language of the agreement is notable in three respects as applied to the case at bar. *Id*. at PageID# 384-385.

First, Defendant points out that, unlike many releases, the language of the release was not confined to the direct subject matter of the litigation, but broad in both temporal scope "from the

---

[2] Both parties agree that Ohio law applies to this issue, as Plaintiffs' arguments rely exclusively on Ohio case law or federal cases applying Ohio law, and Defendant expressly states that "[t]he March 2020 settlement agreement does indicate that it is to be governed by and construed by Ohio law." (R. 27, PageID# 409-413, R. 31, PageID# 474).

beginning of time and onwards …" and applied regardless of whether a claim "was asserted or not asserted" in the lawsuit; and applied whether or not a claim was "matured, contingent, accrued, or otherwise." (R. 23-1, PageID# 384, citing R. 18, PageID# 337). Second, Defendant accurately cites the Settlement Agreement's language stating the release applies to any "claim, demand, suit, cause of action, right, debt, liability, assessment, obligation or damage, [that] was known or unknown to any or all of the Plaintiffs .…" *Id.*, PageID# 385, citing R. 18, PageID# 337. Finally, Defendant points to language in the § 14 of the Settlement Agreement—"This Agreement is the result of negotiations between equally situated Parties who have the ability to advance and protect their respective legal and other interests, and each of the Parties have had a full and complete opportunity to review, analyze, evaluate, negotiate, edit and draft the terms and conditions of this Agreement"—as evidence that Plaintiffs knew they were foregoing any other potential claims against their father or Defendant Amy Carmen. *Id*.

Plaintiffs respond by arguing that the release should not apply because Defendant was not a party to the 2019 action, that she did not pay consideration for the release, she allegedly concealed certain actions from Plaintiffs, and finally that general releases do not apply to unknown claims. (R. 27, PageID# 409- 413).

"Releases are contracts." *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 683 (6th Cir. 2013) (citing 29 Williston on Contracts § 73:7 (4th ed. 2011)).

> Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus; *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920, syllabus. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. *Kelly*, *supra*, at 132, 31 OBR at 291, 509 N.E.2d at 413. When the terms in a contract are

> unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150.

*Shifrin v. Forest City Enters.*, Inc., 1992-Ohio-28, 64 Ohio St. 3d 635, 638, 597 N.E.2d 499, 501 (Ohio 1992). The Court finds the release language in the Settlement Agreement to be clear and unambiguous, and Plaintiffs have not meaningfully argued otherwise. Under the plain and unambiguous language of the agreement, Plaintiffs clearly intended to release: (1) *all* claims against both the decedent and the Defendant, including claims that were unknown to them, and (2) release all claims including those concerning "entities which the Carmens own or in which the Carmens have a legal or beneficial interest, whether an ownership or other interest" such as the Trust. Whether the Plaintiffs knew of the Trust's existence is immaterial.

"In the case of a release that is unqualified and absolute in its terms, a presumption arises that the injury has been fully satisfied." *Whitt v. Hutchison*, 43 Ohio St. 2d 53, 60, 330 N.E.2d 678, 683 (Ohio 1975). Under longstanding Ohio law, "[a] release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Haller v. Borror Corp.*, 50 Ohio St. 3d 10, 13-14, 552 N.E.2d 207, 210 (Ohio 1990) (*citing Perry v. M. O'Neil & Co.*, 78 Ohio St. 200, 85 N.E. 41 (Ohio 1908)); *accord Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 48, 152 Ohio St. 3d 453, 465, 97 N.E.3d 458, 470 (Ohio 2018) ("A release is an absolute bar to a later action on any claim encompassed within it, absent a showing of fraud, duress, or other wrongful conduct in procuring it.")[3] "[W]hen the

---

[3] "Avoiding a release on the basis that it was procured through duress requires proof of coercion by the other party to the contract." *Lucarell*, 97 N.E.3d at 470 (*citing Blodgett v. Blodgett,* 49 Ohio St.3d 243, 246, 551 N.E.2d 1249 (1990)). There is no allegation that the release was obtained by coercion.

parties have negotiated the release with the assistance of legal counsel, and both sides have agreed to the language included in the release, there is an assumption that the parties are fully aware of the terms and scope of their agreement." *Task v. Nat'l City Bank*, 1994 Ohio App. LEXIS 437, at \*12 (Ohio Ct. App. Feb. 10, 1994) (citations omitted).

"Releases from liability for *future tortious conduct* are generally not favored by the law and will be narrowly construed." *Fox v. Nationwide Mut. Ins. Co.*, 2018-Ohio-2830, ¶ 77, 117 N.E.3d 121, 142 (Ohio Ct. App. 10th Dist. Jul. 17, 2018) (*citing Denlinger v. Columbus*, 2000 Ohio App. LEXIS 5679 (Ohio Ct. App. 10th Dist. Dec. 7, 2000)). Here, however, the Amended Complaint does not allege tortious conduct that postdates the release in the Settlement Agreement, as the factual allegations in the Amended Complaint that underpin their claims—the change in beneficiaries, Defendant's tenure as the trustee, and the change in situs—all predate the Settlement Agreement's release.

Plaintiffs rely on *Forry, Inc. v. Neundorfer, Inc.*, for the proposition that "general language of release will not encompass claims of which the releasor was unaware, particularly if the releasee concealed them from him." 837 F.2d 259, 263 (6th Cir. 1988) *(relying on Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178, 1182 (11th Cir. 1982) (finding that a release giving up all claims against a car dealer arising out of a new car purchase did not encompass the car buyer's claim under the Truth In Lending Act, because car buyer was unaware that release would encompass such a claim)). (R. 27, PageID# 410). The Court finds *Forry* distinguishable because it was a copyright claim involving a defendant who sought to enforce a release of all claims related to "any product presently manufactured by [defendant]" where the defendant had misled the plaintiff during a deposition by asserting it never manufactured the product in question— despite having done so for several years. *Id*. at 263-264. Further distinguishing the case, *Forry*

9

relied on an Eleventh Circuit decision applying the Truth in Lending Act and not on Ohio state law concerning the enforceability of releases. As stated above, "[a]bsent fraud or mutual mistake, *broadly worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor*." *Sourial v. Nationwide Mut. Ins. Co.*, 2018-Ohio-2528, ¶ 40, 116 N.E.3d 761, 774 (Ohio Ct. App. 10th Dist. 2018) (emphasis added).

To the extent Plaintiffs argue that Ohio law does not enforce broad settlement releases if the claims were unknown to the releasing party as of the execution of the agreement, the cases cited by Plaintiffs do not expressly stand for this proposition.[4] Plaintiff cites a federal district court case applying Ohio law, where the court declined to enforce broad release language against insureds because the court found "[a] review of the settlement agreements shows that the parties did not intend the settlement agreements to encompass rental-car benefits" based on (1) strictly construing the agreement against the drafter; and (2) the inconsistency of Defendant's position that towing costs did not arise out of vehicle loss or damage while arguing that car rental costs did arise from vehicle loss. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, No. 1:08-cv-605, 2009 U.S. Dist. LEXIS 37599 (N.D. Ohio May 4, 2009).[5] The Settlement Agreement herein was

---

[4] To the extent the cases cited do stand for such a proposition, the Court disagrees that it amounts to an accurate statement of Ohio law as set forth by the Ohio Supreme Court.

[5] The *Van Horn* decision relies on *Tanker v. N. Crest Equestrian Ctr.*, 86 Ohio App. 3d 522, 523, 621 N.E.2d 589, 589 (1993), an Ohio appellate court decision, which found the pre-injury indemnity agreement waiver was not a release and "so general as to be meaningless." This case does not involve an exculpatory contract, but even "[e]xculpatory contracts which clearly and unequivocally relieve one from the results of his own negligence are generally not contrary to public policy in Ohio. *See* 17 Ohio Jurisprudence 3d (1980) 532-533, Contracts, § 97. It is therefore well settled law that a participant in a recreational activity is free to contract with the proprietor of such activity so as to relieve the proprietor of responsibility for damages or injuries to the participant caused by the negligence of the proprietor." *Swartzentruber v. Wee-K Corp.*, 117 Ohio App. 3d 420, 424, 690 N.E.2d 941, 944 (Ohio Ct. App. 1997) (collecting cases).

the product of mutual negotiations according to its own terms, and is not strictly construed against either party. Moreover, the Court finds no ambiguity in the relevant terms of the agreement.

This case does not involve a fraud in the factum, which would render the release void. The Ohio Supreme Court has distinguished between fraud in the factum claims, in which releases are void from the outset, versus releases obtained by fraud in the inducement, which are merely voidable. *See Berry v. Javitch, Block & Rathbone, L.L.P.*, 2010-Ohio-5772, ¶ 23, 127 Ohio St. 3d 480, 484, 940 N.E.2d 1265, 1269 (Ohio 2010) (*citing Picklesimer v. Baltimore & O. R. Co.*, 151 Ohio St. 1, 6, 84 N.E.2d 214, 216 (Ohio 1949)).[6] The Ohio Supreme Court has explained as follows:

> We distinguished between a release that is void and one that is voidable, noting that an agreement is void **when a party has been fraudulently prevented from knowing that he or she has signed a release or its contents**, and is merely voidable when the party alleges fraud or misrepresentation as to the facts inducing the party to settle. *Id*. at 5, 38 O.O. 477, 84 N.E.2d 214. The Berrys do not argue that they were prevented from knowing that they signed a settlement agreement or from knowing the contents of the settlement agreement. Rather, the Berrys argue that Javitch fraudulently misrepresented facts to induce them to settle, making this a fraud in the inducement claim.

940 N.E.2d at 1269 (emphasis added).

Similarly here, the Amended Complaint has not plausibly alleged that Plaintiffs were fraudulently prevented from knowing that they were signing a release when they signed the Settlement Agreement. At most, Plaintiffs suggest that Defendant failed to carry out her trustee duties (prior to the Settlement Agreement) in accord with Ohio trust laws. Thus, fraud in the

---

[6] The Court further notes that the above cases allowing for a determination that a release was void or voidable involved personal injuries, and this is *not* a personal injury action.

factum cannot void the release.

Plaintiffs also do not meaningfully allege facts that could support an argument that Plaintiffs were fraudulently induced into entering the Settlement Agreement. Defendant has cited persuasive case law from other Circuits that "Parties involved in litigation know that they are locked in combat with an adversary and thus have every reason to be skeptical of each other's claims and representations." (R. 23-1, PageID# 385, *quoting Facebook, Inc. v. Pac. Nw. Software, Inc*., 640 F.3d 1034, 1039 (9th Cir. 2011); *Goodman v. Epstein*, 582 F.2d 388, 403-404 (7th Cir. 1978) (parties signing a release of claims have a "duty of inquiry")). As stated by the Fourth Circuit Court of Appeals, parties "can use discovery to ferret out a great deal of information before even commencing settlement negotiations. They can further protect themselves by requiring that the adverse party supply the needed information, or provide specific representations and warranties as a condition of signing the settlement agreement." *Facebook*, 640 F.3d at 1039. The essence of these decisions is echoed by an Ohio appellate court that found a plaintiff could not unburden himself of a prior release that applied to unknown claims due to "[plaintiff's] lack of diligence in ascertaining whether he had other claims and his consequent lack of knowledge of his rights and the legal effect of the scope of the release," which the court determined were "not grounds to relieve him of the effect of the release." *Task*, 1994 Ohio App. LEXIS 437, at *15.

Plaintiffs' assertion that they could not have discovered the Trust-related actions during the 2019 lawsuit is not well-taken. Plaintiffs or their counsel could easily have ascertained information from their father during the course of the lawsuit pertaining to any expectation of inheritance or their potential beneficiary status of any trusts. They cannot use their neglect to do so as a basis to be released from the Settlement Agreement.

12

Further, the Court cannot find that the actions of Defendant occurring prior to the initiation of the 2019 lawsuit were done to fraudulently induce Plaintiffs to enter into the Settlement Agreement. The Amended Complaint identifies no alleged actions by Defendant to induce Plaintiffs to enter into the Settlement Agreement. The mere fact that Plaintiffs were allegedly unaware of the Trust or any modifications thereof do *not* constitute fraud in the inducement.[7]

Plaintiffs' argument that Defendant cannot enforce the Settlement Agreement because she was not a party to the 2019 litigation is not well taken. Defendant was expressly a party to the Settlement Agreement. Plaintiffs' argument that Defendant provided no consideration for the release is also unconvincing. Decedent paid Plaintiffs and their mother $100,000.00 as part of the Settlement Agreement. That the money did not come from Defendant is immaterial, as Plaintiffs cite no authority suggesting that consideration must come separately from each releasing party. It is quite possible that the decedent would not have agreed to pay such a sum if his wife was not also released from claims. Moreover, consideration need not be monetary. As Defendant points out, she agreed to be bound by the non-disparagement clause in ¶10 of the Settlement Agreement, and she also released any claims she may have had against Plaintiffs in ¶6. "Valuable consideration may consist of either a detriment to the promisee or a benefit to the promisor, and once consideration is shown, a court will not inquire into the adequacy of consideration except in cases of fraud or unfair treatment." *Ford v. Tandy Transp.*, 86 Ohio App.

---

[7] It also bears noting that "[a] release of liability procured through fraud in the inducement is voidable only, and can be contested only after a return or tender of consideration." *Haller*, 50 Ohio St. 3d at 14 (citations omitted) ("a releasor ought not be allowed to retain the benefit of his act of compromise and at the same time attack its validity when he understood the nature and consequence of his act, regardless of the basic nature of the inducement employed.")

13

3d 364, 384, 620 N.E.2d 996, 1009 (Ohio Ct. App. 1993).

Finally, Plaintiffs' labelling the 2019 lawsuit, as a "Limited Lawsuit" involving only claims related to educational expenses under the terms of a prenuptial agreement, is irrelevant. The express terms of the Settlement Agreement clearly intended to settle all disputes between the parties. Plaintiffs cite no authority suggesting that a settlement of a lawsuit cannot include the release of claims that were not actively litigated.

### V. Conclusion

For the foregoing reasons, Defendants' Rule 12(c) motion for judgment on the pleadings (R. 22) is GRANTED. This action is hereby DISMISSED with prejudice.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States District Judge

Date: April 2, 2026